Oscar HINOJOS–MENDOZA, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 05SC881.

Supreme Court of Colorado, En Banc.

Sept. 10, 2007.

Rehearing Denied Nov. 5, 2007.*

* Justice Martinez and Justice Bender would grant; Justice Eid does not participate.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

In this case we must decide the constitutionality of section 16–3–309(5), C.R.S. (2006),[1] in light of the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Petitioner, Oscar Hinojos–Mendoza, argued in the court of appeals that *Crawford* rendered section 16–3–309(5) facially unconstitutional, and that the statute is unconstitutional as applied to him. The court of appeals declined to address the facial and as-applied challenges because Hinojos–Mendoza did not raise them in the trial court, but did hold that the lab report in this case is nontestimonial hearsay under *Crawford.*

*People v. Hinojos–Mendoza,* 140 P.3d 30, 37 (Colo.App.2005). The court of appeals further held that the trial court did not err in admitting the lab report without the testimony of its author. *Id.* at 38. We granted certiorari to review the court of appeals' decision.[2] We now reverse in part and affirm in part on other grounds.

## I. Factual and Procedural History

Hinojos–Mendoza was convicted of unlawful possession with intent to distribute a schedule II controlled substance, cocaine (more than one thousand grams),[3] and sentenced to 16 years in the Department of Corrections. At Hinojos–Mendoza's trial, the People introduced into evidence a Colorado Bureau of Investigation lab report that identifies the substance found in Hinojos–Mendoza's vehicle to be cocaine. The lab report lists Hinojos–Mendoza's name under a section entitled "suspect(s)." The report describes the exhibit at issue as a "tan tape wrapped block containing 1004.5 grams of compressed white powder." Under the "results" section, the report states: "[a]nalysis disclosed the presence of cocaine, schedule II."

The People introduced the lab report into evidence without calling as a witness the technician who prepared the report. Defense counsel objected to the admission of the report on general hearsay grounds. The trial court asked defense counsel whether prior to trial he had requested that the lab technician appear, and whether he was aware that pursuant to section 16–3–309(5) the lab report could be admitted into evidence without the testimony of the technician. Defense counsel stated he had not requested the lab technician's presence because he was unaware of the statute. The trial court conse-

---

1. We cite to the most recent version of the Colorado Revised Statutes because the text of section 16–3–309(5) is the same as it was at the time of Hinojos–Mendoza's trial.

2. We granted certiorari on the following two issues:
   (1) Whether the court of appeals erred in holding that the statements of a report prepared by a "criminalistics laboratory," for use in the prosecution of drug offenses, are not "testimonial" statements for purposes of *Crawford v.*

*Washington,* 541 U.S. 36[, 124 S.Ct. 1354, 158 L.Ed.2d 177] (2004).
(2) Whether section 16–3–309(5), C.R.S. (2006), is unconstitutional on its face and as applied to petitioner because petitioner did not voluntarily waive his right to confront and cross-examine the criminalistics lab technician.

3. § 18–18–405(3)(a)(III), C.R.S. (2006).

quiently overruled the objection and admitted the report pursuant to section 16–3–309(5).

Subsequent to Hinojos–Mendoza's trial but while his direct appeal was pending, the United States Supreme Court decided *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). On appeal, Hinojos–Mendoza argued that section 16–3–309(5) is facially unconstitutional post-*Crawford* and unconstitutional as it was applied in his case. The court of appeals declined to address Hinojos–Mendoza's constitutional challenges to the statute because he had not raised those challenges in the trial court. *Hinojos–Mendoza,* 140 P.3d at 35. The court of appeals did hold, however, that the lab report is nontestimonial hearsay under *Crawford. Id.* at 37, 124 S.Ct. 1354. The court therefore held the trial court did not err in admitting the lab report. *Id.* at 38, 124 S.Ct. 1354. We granted certiorari, and now reverse in part and affirm in part on other grounds.

## II.  Analysis

■■■ The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right "to be confronted with the witnesses against him." The Sixth Amendment right to confrontation applies to state as well as federal prosecutions. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Colorado Constitution also provides that "the accused shall have the right ... to meet the witnesses against him face to face." Colo. Const. art. II, § 16. This right to confrontation is a fundamental constitutional right. *People v. Fry,* 92 P.3d 970, 975 (Colo.2004).

The lab report at issue in this case was admitted into evidence without the testimony of the lab technician who prepared the report, pursuant to section 16–3–309(5), which states in relevant part:

Any report or copy thereof ... of the criminalistics laboratory shall be received in evidence in any court ... in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person. Any

party may request that such employee or technician testify in person at a criminal trial on behalf of the state before a jury or to the court, by notifying the witness and other party at least ten days before the date of such criminal trial.

In 2003, we upheld the facial constitutionality of section 16–3–309(5), concluding that the statute does not violate the right to confrontation guaranteed by the United States and Colorado Constitutions. *People v. Mojica–Simental,* 73 P.3d 15 (Colo.2003). We explained in *Mojica–Simental* that while the right to confront one's accusers is a fundamental constitutional right, it is not without limit. *Id.* at 20. We held that reasonable preconditions on the exercise of a fundamental right do not abridge that right. *Id.* We concluded that the burden placed on the defendant by section 16–3–309(5)—to request the presence of the person who prepared the report prior to trial—was minimal and did not render the statute facially unconstitutional. *Id.*

In 2004, the United States Supreme Court altered its Confrontation Clause jurisprudence in *Crawford.* The Court held that admission of testimonial statements absent the unavailability of the declarant and a prior opportunity for cross-examination by the defendant violates a defendant's Sixth Amendment right to confrontation. 541 U.S. at 68, 124 S.Ct. 1354; *People v. Vigil,* 127 P.3d 916, 921 (Colo.2006). We subsequently adopted the *Crawford* test as the appropriate inquiry for the admission of testimonial hearsay under Colorado's Confrontation Clause. *Compan v. People,* 121 P.3d 876, 884 (Colo.2005); *Fry,* 92 P.3d at 976.

Hinojos–Mendoza urges us to reconsider the facial constitutionality of section 16–3–309(5) in light of the Supreme Court's decision in *Crawford.* Hinojos–Mendoza argues that lab reports are testimonial under *Crawford,* and therefore that section 16–3–309(5) is facially unconstitutional. Hinojos–Mendoza also argues that section 16–3–309(5) is unconstitutional as applied to him. Although the court of appeals did not address these constitutional challenges to the statute, it ruled that the lab report in this case is nontestimonial and therefore *Crawford* did

not require its exclusion. *Hinojos–Mendoza*, 140 P.3d at 37. We therefore begin our analysis by reviewing the court of appeals' holding that the lab report is nontestimonial, and we reverse.

## A. Laboratory Report is Testimonial

■ One of the many difficult questions that courts have had to grapple with in the wake of *Crawford* is whether laboratory reports, such as the one at issue in this case, qualify as "testimonial" statements subject to *Crawford's* requirements for admissibility. The court of appeals concluded that the lab report is nontestimonial, and thus does not implicate *Crawford*. *Hinojos–Mendoza*, 140 P.3d at 37. The court of appeals based its analysis in part on its holding that a lab report qualifies as a business record under the Colorado rules of evidence. *Id.* The court further noted that Hinojos–Mendoza did not dispute at trial that the substance was cocaine but only disputed the weight of the cocaine. *Id.* Because weighing an incoming substance is "a routine laboratory procedure," the technician who prepared the report would "merely have authenticated the document." *Id.* (internal quotation omitted). Finally, the court of appeals distinguished cases holding similar lab reports to be testimonial by finding that the report in this case is not an affidavit, was not "prepared at the express direction of the prosecutor for the purpose of litigation," and contains "no directly accusatorial statements against [Hinojos–Mendoza]." *Id.* We disagree.

Some state courts have held that laboratory reports constitute nontestimonial hearsay after *Crawford*. *See, e.g., Hinojos–Mendoza*, 140 P.3d at 36 (collecting cases); *Perkins v. State*, 897 So.2d 457, 462–65 (Ala. Crim.App.2004) (autopsy report); *People v. Johnson*, 121 Cal.App.4th 1409, 18 Cal. Rptr.3d 230, 233 (2004) (lab report analyzing a rock of cocaine); *Commonwealth v. Verde*, 444 Mass. 279, 827 N.E.2d 701, 706 (2005) (drug certificate); *State v. Dedman*, 136 N.M. 561, 102 P.3d 628, 635–36 (2004) (blood alcohol report). Many of these courts based their conclusion on dictum in *Crawford* which suggested that, historically, business records fall outside the scope of testimonial

hearsay. 541 U.S. at 56, 124 S.Ct. 1354 ("Most of the hearsay exceptions [in 1791] covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); *Hinojos–Mendoza*, 140 P.3d at 36; *Verde*, 827 N.E.2d at 706.

These decisions, as well as the court of appeals' opinion in this case, erroneously focus on the reliability of the reports and whether the reports fall within the business or public records hearsay exceptions. *See, e.g., Perkins*, 897 So.2d at 464 (autopsy report nontestimonial because it fell under a firmly rooted hearsay exception); *Johnson*, 18 Cal.Rptr.3d at 233 (lab report was simply "routine documentary evidence"); *Verde*, 827 N.E.2d at 705 ("Certificates of chemical analysis ... merely state the results of a well-recognized scientific test...."); *Dedman*, 102 P.3d at 635 (blood alcohol report admissible as a public record). The Supreme Court in *Crawford*, however, abrogated reliability as the proper inquiry and divorced Confrontation Clause analysis from the rules of evidence. 541 U.S. at 61, 124 S.Ct. 1354 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' "); *see also Thomas v. United States*, 914 A.2d 1, 11 (D.C.2006); *State v. March*, 216 S.W.3d 663, 665–66 (Mo.2007). Moreover, *Crawford's* dictum regarding the historic business records hearsay exception does not mean that any document which falls within the modern-day business records exception is automatically nontestimonial. *Thomas*, 914 A.2d at 13–14.

■ We therefore find that the better reasoned cases reject the reliability and business record rationale, and instead hold that laboratory reports are testimonial statements subject to *Crawford*. *See, e.g., Thomas*, 914 A.2d at 12–15 (DEA chemist's report identifying substance as cocaine); *People v. Lonsby*, 268 Mich.App. 375, 707 N.W.2d 610, 618–21 (2005) (notes and lab report of crime lab serologist); *State v. Caulfield*, 722 N.W.2d 304, 309–10 (Minn.2006) (lab report identifying substance as cocaine); *March*, 216

S.W.3d at 665–67 (lab report identifying substance as cocaine); *City of Las Vegas v. Walsh,* 121 Nev. 899, 124 P.3d 203, 207–08 (2005) (affidavit of registered nurse who completed blood draw); *State v. Kent,* 391 N.J.Super. 352, 918 A.2d 626, 636–40 (App. Div.2007) (State Police chemist's lab report and a blood test certificate); *State v. Smith,* No. 1–05–39, 2006 WL 846342, at *4–5 (Ohio Ct.App. Apr.3, 2006) (lab reports identifying substance as crack cocaine); *State v. Miller,* 208 Or.App. 424, 144 P.3d 1052, 1058 (2006) (lab reports identifying the presence of methamphetamine); *Deener v. State,* 214 S.W.3d 522, 526 (Tex.App.2006) (chain of custody affidavit and certificate of analysis identifying substance as cocaine).

Turning to the specific lab report at issue in this case, we hold that it is testimonial. The lab report was prepared at the direction of the police and a copy of the report was transmitted to the district attorney's office. There can be no serious dispute that the sole purpose of the report was to analyze the substance found in Hinojos–Mendoza's vehicle in anticipation of criminal prosecution. The report states "offense: 3530—cocaine—sell" and lists Hinojos–Mendoza as the suspect.[4] Moreover, the report was introduced at trial to establish the elements of the offense with which Hinojos–Mendoza was charged.[5] Under such circumstances, the lab report is testimonial in nature. *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354 (including in the core class of testimonial statements those made under circumstances "which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial") (internal quotation omitted); *Thomas,* 914 A.2d at 12–13 (same); *Caulfield,* 722 N.W.2d at 309 (same); *March,* 216 S.W.3d at 666 ("A laboratory report, like this one, that was prepared solely for prosecution

to prove an element of the crime charged is 'testimonial' because it bears all the characteristics of an ex parte affidavit."). We therefore reverse the court of appeals and hold that the lab report in this case is testimonial.

### B. Section 16–3–309(5)

Our holding that the lab report is testimonial does not determine whether Hinojos–Mendoza's right to confrontation was violated by its admission. The People argue that by failing to request the in-person testimony of the lab technician as provided for in section 16–3–309(5), Hinojos–Mendoza waived his right to confront the technician. Hinojos–Mendoza, however, argues that section 16–3–309(5) is facially unconstitutional post-*Crawford;* in the alternative, Hinojos–Mendoza argues that the statute is unconstitutional as applied in his case. The court of appeals declined to address these constitutional arguments because Hinojos–Mendoza did not raise them before the trial court, *Hinojos–Mendoza,* 140 P.3d at 35, and the People urge us to do the same.

■ We generally will not consider constitutional issues raised for the first time on appeal. *People v. Cagle,* 751 P.2d 614, 619 (Colo.1988). Nonetheless, *Crawford* applies to Hinojos–Mendoza because his case was pending on direct appeal when *Crawford* was decided. *People v. Compan,* 100 P.3d 533 (Colo.App.2004), *aff'd,* 121 P.3d 876 (Colo. 2005). Given our holding that the lab report in this case is testimonial, Hinojos–Mendoza may be entitled to relief if *Crawford* rendered section 16–3–309(5) unconstitutional. We therefore exercise our discretion to review these constitutional challenges, particularly in light of the fact that doing so will promote efficiency and judicial economy.

---

4. We therefore disagree with the court of appeals' statements that 1) nothing in the record shows "the report was prepared at the express direction of the prosecutor for the purpose of litigation," and 2) that the report "contains no directly accusatorial statements against [Hinojos–Mendoza]." *Hinojos–Mendoza,* 140 P.3d at 37.

5. The report therefore falls within the definition of "testimony," which is "a solemn declaration

or affirmation made for the purpose of establishing or proving some fact." *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354. The fact that this particular report is not a sworn affidavit is not significant. *Id.* at 52 n. 3, 124 S.Ct. 1354 ("We find it implausible that a provision which concededly condemned trial by sworn *ex parte* affidavit thought trial by *unsworn ex parte* affidavit perfectly OK.") (emphasis in original).

*People v. Wiedemer,* 852 P.2d 424, 433 n. 9 (Colo.1993).

### 1. Facial Challenge

We review the constitutionality of statutes de novo. *E–470 Pub. Highway Auth. v. Revenig,* 91 P.3d 1038, 1041 (Colo. 2004). Statutes are presumed to be constitutional. *Mojica–Simental,* 73 P.3d at 18. The party challenging the facial constitutionality of a statute has the burden of showing the statute is unconstitutional beyond a reasonable doubt. *Id.*

Section 16–3–309(5) requires that at least ten days prior to trial a party—in this case the defendant—request that the lab technician testify, or else the lab report will be admitted without the technician's in-court testimony. Failure to timely request the presence of the lab technician therefore waives the right to confront the technician. Hinojos–Mendoza argues that by admitting testimonial lab reports without a showing of the technician's unavailability and without a prior opportunity for cross-examination, section 16–3–309(5) violates on its face the state and federal Confrontation Clauses. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354.

It is well-established, however, that the right to confrontation can be waived. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Hawkins v. Hannigan,* 185 F.3d 1146, 1154 (10th Cir. 1999). Waiver is defined as the "intentional relinquishment or abandonment of a known right." *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation omitted). Consequently, there is no appeal from a waived right. *United States v. Aptt,* 354 F.3d 1269, 1281 (10th Cir.2004). *Crawford* did not alter the fact that the right to confrontation can be waived.

"The primary purpose of the Confrontation Clause is to secure for a defendant the *opportunity* of cross-examination." *People v. Dist. Court,* 869 P.2d 1281, 1287 (Colo.1994) (emphasis added); *see generally Crawford,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Assuming the opportunity for confrontation is provided, the right to confrontation is not denied because the prosecution is allowed to present testimony which the defendant chooses not to cross-examine. *Dist. Court,* 869 P.2d at 1288. In other words, where a defendant chooses not to take advantage of the opportunity to cross-examine a witness, the defendant has not been denied his constitutional right to confrontation. The procedure provided in section 16–3–309(5) for ensuring the presence of the lab technician at trial does not deny a defendant the opportunity to cross-examine the technician, but simply requires that the defendant decide prior to trial whether he will conduct a cross-examination. The statute provides the opportunity for confrontation—only the timing of the defendant's decision is changed.

We have recognized the constitutionality of similar statutory procedural requirements affecting the exercise of other fundamental constitutional rights. For example, a statute requiring a defendant to make a timely pretrial disclosure of alibi witnesses, or lose the chance to call those witnesses, does not infringe the defendant's constitutional right to call witnesses in his own defense. *People v. Hampton,* 696 P.2d 765, 774 (Colo.1985). We have also held that the statutory prerequisites to a jury trial in municipal court of filing a written demand and payment of a fee do not abridge the constitutional right to a jury trial. *Christie v. People,* 837 P.2d 1237 (Colo.1992). As we said in *Christie,* "[t]he requisite ... demand [for the lab technician to testify] is no more burdensome to a defendant than is making the decision [whether to cross-examine the technician] itself." 837 P.2d at 1244.

We note that other jurisdictions have upheld the post-*Crawford* constitutionality of statutes similar to section 16–3–309(5). *See State v. Cunningham,* 903 So.2d 1110 (La. 2005); *City of Las Vegas v. Walsh,* 121 Nev. 899, 124 P.3d 203 (2005); *Brooks v. Commonwealth,* 49 Va.App. 155, 638 S.E.2d 131 (2006); *cf. State v. Birchfield,* 342 Or. 624, 157 P.3d 216, 219–20 (2007) (holding Oregon's statute requiring the defendant to subpoena the lab technician unconstitutional, but stating a demand requirement would be constitutional). *But see Caulfield,* 722 N.W.2d at 313 (holding that a similar Minnesota statute vio-

lates the Confrontation Clause because it does not give the defendant adequate notice that failure to comply with the statutory notice requirement waives the right to confrontation). We find no constitutional infirmity in section 16–3–309(5), and we therefore uphold the facial constitutionality of the statute.

### 2. As–Applied Challenge

■ Hinojos–Mendoza relies upon our decision in *Mojica–Simental* to argue that section 16–3–309(5) is unconstitutional as applied in his case because he did not voluntarily, knowingly, and intentionally waive his fundamental right to confrontation. In *Mojica–Simental,* we stated in dicta that waiver of the right to confrontation must be voluntary, knowing, and intentional. 73 P.3d at 20. We noted that "[i]f a defendant does not have actual notice of the requirements of the statute, or mistakenly fails to notify the prosecution to have the technician present to testify, there is a significant possibility that a defendant's failure to act may not constitute a voluntary waiver of his fundamental right to confrontation." *Id.* at 20–21. We suggested a number of factors for a trial court to consider when determining the admissibility of a lab report under section 16–3–309(5), including whether "an attorney or a pro se litigant actually knew that he was required to notify the opposing party of his desire to have the witness present." *Id.* at 21. Hinojos–Mendoza argues that because his attorney was unaware of section 16–3–309(5)'s procedural requirement, he did not voluntarily waive his fundamental constitutional right to confrontation, and thus, the statute is unconstitutional as applied.

The dicta in *Mojica–Simental* was based on the faulty premise that the right to confrontation can only be waived if the defendant personally makes a voluntary, knowing, and intentional waiver. 73 P.3d at 20. We cited *People v. Curtis,* 681 P.2d 504 (Colo. 1984), to support the statement in dicta that waiver of the confrontation right must be voluntary, knowing, and intentional. *Id.* In *Curtis,* we held that the right to testify was among "that group of rights so fundamental *and personal* " as to require "the procedural

safeguards concerning voluntary, knowing and intentional waiver ... established for the right to counsel." 681 P.2d at 511 (emphasis added). We determined that the decision whether to testify had to be made by the defendant personally, not by counsel, and in order to ensure that a waiver of the right to testify is voluntary, knowing, and intentional, trial courts must give defendants a thorough on-the-record advisement. *Id.* at 513–15.

■ The fact that relinquishment of the right to testify requires a voluntary, knowing, and intentional waiver by the defendant does not mean that all fundamental constitutional rights are subject to the same requirements. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano,* 507 U.S. at 733, 113 S.Ct. 1770. The right to counsel, the right to testify, the right to trial by jury, and the entrance of a guilty plea are sufficiently personal and fundamental as to require a voluntary, knowing, and intentional waiver by the defendant himself. *Curtis,* 681 P.2d at 511.

■ However, "as to other rights '[d]efense counsel stands as captain of the ship.' " *Id.* (quoting *Steward v. People,* 179 Colo. 31, 34, 498 P.2d 933, 934 (1972)). The right to confrontation falls into the class of rights that defense counsel can waive through strategic decisions, such as choosing whether and how to conduct cross-examination or by stipulating to the admission of evidence. *Id.* ("[D]ecisions committed to counsel include ... whether and how to conduct cross-examination...."); *Morse v. People,* 180 Colo. 49, 54, 501 P.2d 1328, 1330–31 (1972) (defense counsel's stipulation to admission of witness depositions waived the defendant's right to confront the witnesses at trial); *see also Aptt,* 354 F.3d at 1282 (defense counsel waives defendant's Sixth Amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object and the decision is one of reasonable trial strategy); *Hawkins,* 185 F.3d at 1154–56 (same); 3 Wayne R. LaFave

et al., *Criminal Procedure* § 11.6(a) (2d ed. 1999) ("[T]he Supreme Court has indicated, in dictum or holding, that counsel has the ultimate authority in ... foregoing cross-examination."). "Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision to forgo cross-examination...." *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

▆▆▆▆ Defense counsel, therefore, may waive a defendant's right to confront the technician who prepared a lab report by not complying with the procedural requirements of section 16–3–309(5).. Moreover, we presume that attorneys know the applicable rules of procedure. *Christie*, 837 P.2d at 1244. Given this knowledge, we can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue.[6] *See id.* at 1243–44; *see also Barker v. Wingo*, 407 U.S. 514, 528–29, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (a trial court should give "due consideration [to] any applicable formal procedural rule" when determining whether the defendant waived the right to a speedy trial by failing to request one). Therefore, where a defendant such as Hinojos–Mendoza is represented by counsel, the failure to comply with the statutory prerequisites of section 16–3–309(5) waives the defendant's right to confront the witness just as the decision to forgo cross-examination at trial would waive that right.[7] Many other courts have found a valid waiver in similar circumstances. *See Brooks*, 638 S.E.2d at 138 ("In sum, we hold a defendant's failure timely to notify the Commonwealth of his desire to confront the forensic analyst at trial constitutes a waiver

of that right."); *City of Las Vegas*, 124 P.3d at 208; *State v. Campbell*, 719 N.W.2d 374, 378 (N.D.2006); *Deener*, 214 S.W.3d at 528; *see also Caulfield*, 722 N.W.2d at 318–19 (Anderson, J., dissenting).[8]

Defense counsel's statement on the record that he was unaware of section 16–3–309(5) does, however, raise a question about ineffective assistance of counsel. A competent attorney representing a defendant in a drug prosecution should be aware of the statutory procedure required to guarantee the in-court testimony of a lab technician whose report identifying narcotics is to be entered into evidence. An attorney's unexcused failure to comply with the statute may very well constitute ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whether defense counsel's failure to comply with section 16–3–309(5) in this case was a strategic decision or the provision of ineffective assistance of counsel, however, is not before us in this direct appeal.

### III. Conclusion

In sum, we hold that the lab report is testimonial hearsay under *Crawford*, and we therefore reverse that portion of the court of appeals' opinion. Nonetheless, we hold that Hinojos–Mendoza waived his right to confront the technician who prepared the report at trial by failing to comply with section 16–3–309(5). We hold that section 16–3–309(5) is facially constitutional and constitutional as applied to Hinojos–Mendoza. The court of appeals' holding that the trial court did not err in admitting the lab report without the testimony of the technician who prepared the

6. As already explained in this opinion, the right to confront the lab technician is not a personal right that can only be waived by the defendant. Unlike the situation in *Christie*, wherein the right to a jury trial was at stake, the trial court does not need to make sure that the attorney's failure to comply with section 16–3–309(5) reflects the informed and voluntary decision of the defendant.

7. We offer no opinion on whether the analysis would be altered if Hinojos–Mendoza had been a pro se defendant.

8. This conclusion may, at first blush, appear to implicate what is known as the demand-waiver

doctrine, which presumes waiver of a right through inaction. *Barker*, 407 U.S. at 525, 92 S.Ct. 2182. The Supreme Court disapproved of a strict demand-waiver doctrine in determining whether the right to a speedy trial was waived, because the doctrine is inconsistent with the definition of waiver as the intentional relinquishment of a known right. *Id.* In *Christie*, however, we explained the difference between uninformed inaction and informed inaction, noting that "[i]n the latter case ... there is a 'decision' made, namely, the informed decision not to exercise the right...." 837 P.2d at 1243.

report is therefore affirmed on other grounds.

Justice MARTINEZ dissents and Justice BENDER joins in the dissent.

Justice EID does not participate.

Justice MARTINEZ, dissenting.

I agree with the majority that lab reports are testimonial statements subject to Sixth Amendment protections. However, I disagree with the majority's holding that section 16–3–309(5), C.R.S. (2006),[9] can be constitutionally applied without a proper waiver. In *People v. Mojica–Simental,* we unanimously concluded that section 16–3–309(5) is facially constitutional because it may be applied when the right of confrontation is properly waived. 73 P.3d 15, 20 (Colo.2003). After *Crawford v. Washington,* 541 U.S. 36, 50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the *only* circumstance in which section 16–3–309(5) can be constitutionally applied is through a proper waiver of the right to confrontation. I continue to believe that only a voluntary, knowing, and intentional waiver by the defendant or his attorney can operate to properly waive a defendant's fundamental right to confront witnesses. By eliminating the requirement of a voluntary, knowing, and intentional waiver, the majority has eliminated the condition upon which the constitutionality of section 16–3–309(5) was predicated. The majority has therefore overruled the basic foundation of *Mojica–Simental,* leaving its holding that section 16–3–309(5) is facially constitutional an empty shell without any basis or support. I therefore respectfully dissent.

**I.**

A statute is facially unconstitutional only if there are no circumstances in which it can be applied constitutionally. *People v. Vasquez,* 84 P.3d 1019, 1021 (Colo.2004). In *Mojica–*

*Simental,* we held that there was at least one circumstance under which section 16–3–309(5) could be constitutionally applied. 73 P.3d at 20. That circumstance was if the defendant voluntarily, knowingly, and intentionally waived his fundamental right to confront witnesses. *Id.* at 21. Because there was a circumstance under which the statute could be applied constitutionally, we held it was facially constitutional. *Id.* at 20. Thus, though *Mojica–Simental* is divided into a section addressing facial constitutionality and another section addressing as-applied constitutionality, the two sections cannot be severed from each other. We held, as part of our facial constitutional analysis, that without a voluntary, knowing, and intentional waiver, section 16–3–309(5) could not be applied constitutionally. *Id.* Similarly, we held that trial courts could constitutionally apply the statute by addressing the reliability concerns protected by the Sixth Amendment or by ensuring the defendant properly waived his rights. The majority has overruled *Mojica–Simental's* analytical foundation by discarding the requirement of a voluntary, knowing, and intentional waiver, and leaving it without the central premise upon which the holding of facial constitutionality is dependent.

**A.**

"It is universally recognized that some constitutional rights are sufficiently fundamental to share the procedural safeguards concerning voluntary, knowing and intentional waiver." *People v. Curtis,* 681 P.2d 504, 511 (Colo.1984). The right to confront witnesses is one of these fundamental rights. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (*cited in Mojica–Simental,* 73 P.3d at 20). We therefore held in *Mojica–Simental* that a defendant's waiver of the right to confront witnesses must be voluntary, knowing, and intentional, whether given by the defendant or his attorney.[10]

---

**9.** The statute states that information in a lab report has the same weight as in-person testimony and only permits cross-examination of the lab technician if the defendant gives ten days notice. § 16–3–309(5).

**10.** Contrary to the majority's statement otherwise, *Mojica–Simental* does *not* require that "the

defendant *personally* make[] a voluntary ... waiver." Maj. op. at 669 (emphasis added). In fact, we specifically recognized the attorney's role in complying with the statute when listing the factors courts should consider before excluding reports: "whether *an attorney* or a pro se litigant *actually knew* that he was required to notify the opposing party of his desire to have the

*Mojica–Simental,* 73 P.3d at 20; *see Curtis,* 681 P.2d at 514.

In *Mojica–Simental* we relied on *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and held that under certain circumstances section 16–3–309(5) could be applied constitutionally and provided a number of factors for a trial court to weigh before admitting a lab report pursuant to the statute. 73 P.3d at 20–21. Because a proper waiver would allow the statute to be applied constitutionally, we found it facially constitutional. *See Vasquez,* 84 P.3d at 1021.

In 2004, the United States Supreme Court decided *Crawford v. Washington* and overruled *Roberts.* 541 U.S. at 50, 124 S.Ct. 1354. In *Crawford,* the United States Supreme Court held that the principal evil at which the Confrontation Clause was directed was the use of ex parte examinations as evidence against the accused. *Id.* The only testimonial statements that may be admitted at trial against a defendant are those in which the defendant had a prior opportunity for cross-examination. In overruling the balancing tests spawned by *Roberts,* including our own, the Supreme Court held that "[the] reliability [of testimonial statements must] be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 100 S.Ct. 2531; *see id.* at 63, 100 S.Ct. 2531 (*overruling People v. Farrell,* 34 P.3d 401, 406–407 (Colo.2001) and *Stevens v. People,* 29 P.3d 305, 316 (Colo.2001) (establishing multi-factor reliability tests under *Roberts* )). Thus, the possibility we left open in *Mojica–Simental,* that through a balancing test trial courts could constitutionally apply the statute, was firmly closed by *Crawford.*

After *Crawford,* section 16–3–309(5) can be constitutionally applied only if the defendant either: (1) cross-examines the lab technician, or (2) properly waives his right to confrontation. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that fundamental rights can be waived or forfeited). Thus, post-*Crawford, Mojica–Simental's* waiver requirement has become even more important because it is now the only manner in which the statute can be applied constitutionally without cross-examination.

Exactly like the ex parte affidavits *Crawford* eliminated, lab reports, and all other testimonial statements made by unavailable witnesses not subject to cross-examination, should be excluded unless the defendant has the prior opportunity to cross examine, or the right has been properly waived. The Sixth Amendment makes no distinction between types of testimonial statements. Lab reports, like witness statements to police, see *Raile v. People,* 148 P.3d 126, 133 (Colo. 2006), and child sexual assault statements, *see People v. Moreno,* 160 P.3d 242, 246 (Colo.2007), are subject to the protection of the Sixth Amendment alike. *See* maj. op. at 665–67 (finding lab reports testimonial). The Sixth Amendment does not allow any written testimonial statements to be admitted except through cross-examination or a voluntary, knowing, and intentional waiver. A defendant's constitutional protections, therefore, cannot be bypassed by a set of presumptions resulting in an automatic waiver.

### B.

Today, the majority replaces *Mojica–Simental's* requirement of a voluntary, knowing, and intentional waiver with an automatic waiver premised upon an irrebuttable presumption. Under the majority's logic, if the ten day notice period required by the statute passes, then the defendant or his attorney is presumed to both know the law and therefore to have waived the defendant's rights. The majority applies its presumption in this case even though there is evidence rebutting it. The majority has thereby created an irrebuttable presumption of waiver that applies automatically upon the passage of the ten-day time frame.

The majority begins its analysis by stating: "[W]e presume that attorneys know the applicable rules of procedure." Maj. op. at 670.[11] However, in this case the attorney *did*

---

*witness present." Mojica–Simental,* 73 P.3d at 21.

11. Interestingly, the majority relies on *Christie v. People,* 837 P.2d 1237 (Colo.1992) as direct support for this critical part of its argument, but

*not know* about the statute's notice requirement. Thus, the presumption, having been rebutted, should no longer have any force or effect.

Despite the state of the record reflecting the attorney's actual ignorance of the law, the majority applies the presumption and creates the legal fiction that the attorney "knew" of the statute's requirements. No explanation is given as to why the presumption that the attorney knew the law was not rebutted by the evidence. In effect, the majority creates an irrebuttable presumption by applying the presumption of knowledge of the law when the attorney said on the record that he was unaware of the law.[12]

Even if one were to accept the irrebuttable presumption as a replacement for a "knowing" waiver, the majority has still not provided a constitutionally sufficient explanation for how unknowing inaction amounts to an "intentional" waiver. The "knowing" element of a constitutional waiver is different and separate from the "intentional" element. *People v. Mozee*, 723 P.2d 117, 122 (Colo.1986) (*quoting Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (distinguishing between the knowing element and intentional element of a constitutionally sufficient waiver). Furthermore, an effective intentional waiver requires actual, not presumed, knowledge of what is being waived. *Id.* The defendant must be "fully aware of what he is doing and must make a conscious, informed choice to relinquish the known right."[13] *Id.* The

"waiver" presumed by the majority here is therefore fundamentally inadequate.

Furthermore, this is not, as the majority states, a matter of timing. Maj. op. at 668. The waiver of the right to examine a witness at trial, when the witness has just finished testifying for the prosecution, is clearly a voluntary, knowing, and intentional waiver. The judge provides the defendant with an actual and immediate opportunity to ask questions at that moment and the defendant either proceeds or waives. The record thus contains a clear indication of a voluntary, knowing, and intentional waiver. Any resemblance between a waiver created by a legally fictitious irrebuttable presumption contradicted by the actual facts and a waiver created by choosing not to examine a witness who just finished testifying at trial is therefore purely illusory. Construing the issue as a matter of timing does not, therefore, resolve the serious concerns raised by the majority's use of presumptions.

We have long held that a presumption favoring the prosecution in criminal cases raises serious due process concerns. *Jolly v. People*, 742 P.2d 891, 896 (Colo.1987) (recognizing that the use of presumptions relieves the prosecution of its constitutionally mandated burden of proof). In contrast, there *is* a strong presumption against a presumption of waiver by the defendant of a fundamental constitutional right. *People v. Alengi*, 148 P.3d 154, 159 (Colo.2006). Courts should allow for "every reasonable presumption

then distinguishes *Christie* as inapplicable to the resolution of this case in a footnote to the next sentence. Maj. op. at 669–70 & n. 6. Furthermore, though *Christie* supports the majority's position, the sentence cited to is buried in the middle of a paragraph addressing a separate issue and was made without any citation or support of any kind. 837 P.2d at 1244. It provides little weight to the majority's most important assumption.

12. If the majority does not believe that the attorney did not know of the statute, it should remand the case to the trial court to test the credibility of his assertion. Since the majority did not remand the case, it is possible it may have instead engaged in its own determination of the credibility of the attorney's statement at trial that he was not aware of the statute. It is not our role to weigh the credibility of witnesses. *People v. Pitts*, 13 P.3d 1218, 1221 (Colo.2000). The ma-

jority's decision to disbelieve the attorney here contradicts this long-held rule.

13. None of the out-of-state cases cited by the majority involve defendants who were unaware of the statute in question. In fact, the statutes involved in those cases *required* that the prosecution notify the defendant of the reports before the statute's deadline. Thus, proper waiver requires notice before it can be voluntary, knowing, and intentional. Of the cases cited by the majority, only *City of Las Vegas v. Walsh*, 121 Nev. 899, 124 P.3d 203 (2005), *cert. denied*, 547 U.S. 1071, 126 S.Ct. 1786, 164 L.Ed.2d 519 (2006), has been appealed to the United States Supreme Court and this case presents a different issue than *Walsh*. Further, as the majority has noted, state courts are split on this issue and some statutes similar to ours have been struck down as unconstitutional because they lacked notice requirements. Maj. op. at 668–69.

**674**

*against* waiver" and should not presume a defendant agrees with the loss of a fundamental right. *Barker v. Wingo*, 407 U.S. 514, 525, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (emphasis added); *People v. Arguello*, 772 P.2d 87, 93 (Colo.1989). In the context of the right to counsel,[14] if a "record is silent regarding the issue of waiver, *no presumption can arise*." *Arguello*, 772 P.2d at 93 (*citing Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)). The right to confront witnesses is hardly different; though defendants need not personally waive this right, that does not justify undermining the Sixth Amendment's fundamental constitutional protections.

It is contrary to fundamental principles of constitutional law to hold that, because defendants need not personally waive a fundamental right, they are subject to an irrebuttable presumption that operates to automatically waive a fundamental right without any voluntary, knowing, and intentional act by the attorney. The majority has effectively eliminated the only basis upon which section 16–3–309(5) is facially constitutional—the requirement that a fundamental right be waived through a voluntary, knowing, and intentional waiver. Thus, the majority has effectively overruled *Mojica–Simental's* essential holdings, and its rationale threatens to undermine our other recent cases holding that fundamental rights may only be voluntarily, knowingly, and intentionally waived.[15] *See Alengi*, 148 P.3d 154, 159 (Colo.2006) (holding that waiver of right to counsel must be voluntary, knowing, and intelligent); *People v. Isaacks*, 133 P.3d

1190, 1195 (Colo.2006) (holding that waiver of right to jury trial must be voluntary, knowing, and intentional).

### II.

This case illustrates why a voluntary, knowing, and intentional waiver must be required before applying section 16–3–309(5). The trial court applied the statute to overrule the defendant's objection to the admission of the lab report. The defendant's need for personal testimony thereafter became apparent: the report was ambiguous about the weight of the drugs. It listed the weight of the "tan tape wrapped block" as 1004.5 grams, but omitted whether the weight included the tape and packaging or was just the net weight of the drugs. The weight of the drugs was a significant fact. The maximum sentence for a class three felony possession with intent to distribute less than one thousand grams is sixteen years in prison.[16] The maximum sentence for one thousand grams or more is twenty-four years in prison.[17] Thus, a critical fact at trial was the net weight of the drugs. Because the lab technician failed to testify, the jury was deprived of this important testimony, and Hinojos–Mendoza lost his right to confront the evidence against him. As a result, Hinojos–Mendoza was exposed to a higher maximum sentence.

The officer who did testify about the report could not answer whether the weight listed on the report was the net weight of the drugs or if it included the tape because he was not the lab technician. Despite this

---

**14.** The majority accepts there is a connection between the right to effective assistance of counsel and counsel's waiver of his client's fundamental rights. Maj. op. at 670.

**15.** The majority here, comprised of members of the court that reached the unanimous conclusion that a fundamental right must be properly waived for the statute to be constitutional, now characterizes *Mojica–Simental's* holdings as "dicta." Maj. op. at 668–69. However, the majority offers no reason for why it believes our holding was dicta. The as-applied language the majority now overrules as dicta is in its own full and complete section of the opinion, separately and explicitly addressed by us, and agreed upon unanimously. It was not an aside we added as a cautionary or advisory language; we intended

that trial courts actually follow its instructions. As I have already shown, without a proper waiver, as described in the as-applied section, the statute cannot be applied constitutionally. If it cannot be applied constitutionally, then the statute is facially unconstitutional. The two sections are therefore inseparable.

**16.** § 18–18–405(3)(a)(II), C.R.S. (1998) (requiring a sentence at least in the midpoint of the presumptive range for drugs weighing at least four hundred fifty grams but less than one thousand grams).

**17.** § 18–18–405(3)(a)(III), C.R.S. (1998) (requiring a sentence higher than the maximum presumptive range for drugs weighing one thousand grams or more).

ambiguity, and based on weight of the drugs listed in the report, Hinojos–Mendoza was exposed to a higher maximum sentence. Thus, he may have received a higher sentence simply because he was unable to challenge a statement contained within the report. Such a result, if arrived at in a capital case and weighing heavily in favor of death, would be unacceptable. It is equally unacceptable in a drug case where test results or procedures are potentially unreliable or ambiguous. The crucible of cross examination provides a critical bulwark against unreliable evidence and unfair trials. *Crawford,* 541 U.S. at 67–68, 124 S.Ct. 1354. Thus, the admission of the report was a violation of Hinojos–Mendoza's fundamental constitutional rights and constitutes reversible error.

### III.

The constitutionality of section 16–3–309(5) depends upon a voluntary, knowing, and intentional waiver by the defendant or his attorney. Because the majority has eliminated this requirement, I dissent.

