The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Steve MARTINEZ, Jr., Defendant–
Appellant.

No. 08CA1417.

Colorado Court of Appeals,
Div. VI.

April 28, 2011.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Lynn M. Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge RICHMAN.

Defendant, Steve Martinez, Jr., appeals the judgment of conviction on one count of vehicular homicide—driving under the influence (DUI), and the eight-year sentence to the Department of Corrections imposed on his conviction. We affirm.

## I. Background

On the night of January 31, 2005, defendant and three other teenagers, including C.B., had been drinking alcohol at defendant's grandmother's home when defendant volunteered to drive C.B. to a fast food restaurant. As defendant drove along, a police officer observed that defendant's vehicle had an open gas tank door, was speeding, and was braking excessively at a stoplight. The officer suspected that the driver was drunk and turned on his vehicle's emergency lights and siren. Rather than pull over, defendant's vehicle accelerated onto the highway.

Shortly thereafter, defendant's vehicle collided with a tractor-truck stopped at the bottom of a highway exit ramp. The officer arrived at the scene within thirty seconds of the collision. C.B. was airlifted to the hospital, but died the following day from injuries incurred in the collision.

Defendant, who also was seriously injured, was transported to a hospital. Because the pursuing officer had probable cause to suspect defendant was driving under the influence of alcohol, two nurses obtained blood samples from defendant. Chematox Laboratories analyzed the alcohol content of the samples.

The state charged defendant with vehicular homicide—driving under the influence, a class three felony in violation of section 18-3-106(1)(b)(I), C.R.S.2010; vehicular homicide—reckless driving, a class four felony in violation of section 18-3-106(1)(a), C.R.S.

2010; and driving under restraint, a misdemeanor in violation of section 42-2-138, C.R.S.2010.

Defendant was deemed incompetent to proceed to trial for a period of approximately two years due to head injuries he suffered in the collision. He was restored to competency in 2007, and his case was tried in March 2008.

At trial, the prosecution called Sarah Urfer, an employee of Chematox, who was qualified without objection as an expert in forensic toxicology. Urfer testified that the Colorado Department of Health annually certified Chematox Laboratories. Urfer also testified about Chematox's calibration and testing procedures and the process it used to test defendant's blood samples. However, Urfer did not personally test or supervise the testing of defendant's blood samples. She identified exhibits 12 and 13, Chematox's laboratory reports for the two blood kits containing defendant's samples. The exhibits reflected defendant's blood alcohol content at two different times after the accident: .113 at 1:10 a.m., and .097 at 1:55 a.m.

Defendant objected to the admission of the exhibits on grounds of hearsay and lack of foundation. The prosecution argued that the exhibits were admissible pursuant to section 16-3-309(5), C.R.S.2010. That section provides:

Any report or copy thereof or the findings of the criminalistics laboratory shall be received in evidence in any court ... in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis ... had testified in person. Any party may request that such employee or technician testify in person at a criminal trial on behalf of the state before a jury or to the court, by notifying the witness and other party at least ten days before the date of such criminal trial.

§ 16-3-309(5). Defendant argued that the statute was inapplicable because Chematox was a private business and not a state-run criminalistics laboratory, defendant's counsel

stating only: "It is the criminalistics laboratory. This is a private business." The court found that Chematox was a criminalistics laboratory within the meaning of the statute and admitted exhibits 12 and 13, pursuant to section 16–3–309(5).

Urfer then opined, based on the blood alcohol content set forth in the reports and extrapolating from that data, that defendant had a blood alcohol content of .148 at the time of the collision. Defendant did not object to her opinion.

The jury returned guilty verdicts on the charges of vehicular homicide—DUI, and the lesser included offense of careless driving resulting in death. The court merged the careless driving charge and entered judgment on the vehicular homicide—DUI conviction. The court sentenced defendant to eight years in the custody of the Department of Corrections (DOC) and five years mandatory parole.

## II. Admission of Laboratory Findings

On appeal, defendant contends that the trial court erred in admitting exhibits 12 and 13 because they were prepared by a private laboratory, and because they were admitted without the testimony of the testing technician in violation of defendant's right to confrontation. We disagree with both contentions.

### A. Private Laboratory

██ "We review de novo a trial court's interpretation of a statute governing the admissibility of a particular type of evidence." *People v. Hill*, 228 P.3d 171, 173 (Colo.App. 2009); *accord People v. Williams*, 183 P.3d 577, 578 (Colo.App.2007).

Defendant argues that the use of the words "the" and "criminalistics" in the first phrase of section 16–3–309(5) ("Any report or copy thereof or the findings of *the criminalistics* laboratory . . ."), indicates that the statute applies only to the Colorado Bureau of Investigation (CBI) or other state-run criminalistics laboratories that are part of local law enforcement agencies, and not to other private laboratories. We disagree.

As defendant correctly states, the phrase "the criminalistics laboratory" is not defined in the statute, nor do the parties refer us to any case that has defined the term. Thus, we must interpret the statutory language.

The interpretation of a statute is a question of law, which we review de novo. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo. 2000). Our primary task when construing a statute is to give effect to the General Assembly's intent, which we determine primarily from the plain language of the statute. *Romero v. People*, 179 P.3d 984, 986 (Colo. 2007). We construe the statute as a whole, in an effort to give consistent, harmonious, and sensible effect to all its parts, and we read words and phrases in context and construe them according to the rules of grammar and common usage. *People v. Banuelos–Landa*, 109 P.3d 1039, 1041 (Colo.App. 2004).

If the statutory language is clear and unambiguous, we do not engage in further statutory analysis. *Romero*, 179 P.3d at 986. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006).

A statutory interpretation leading to an illogical or absurd result will not be followed, and we avoid constructions that are at odds with the legislative scheme. *See People v. Tixier*, 207 P.3d 844, 847 (Colo.App.2008).

The subject matter of section 16–3–309 is the "admissibility of laboratory test results" in any criminal case under various circumstances, as its title suggests. As described in *People v. Mojica–Simental*, 73 P.3d 15, 18 (Colo.2003), the purpose of subsection (5) is to "streamline the trial process by admitting a report without the testimony of the technician in cases where the parties do not feel that the technician's testimony would be useful." Moreover, the legislative history for the section includes no discussion of the term "the criminalistics laboratory," nor does it include any indication that the General As-

sembly sought to limit the term to include only the CBI or other state-run criminalistics laboratories that are part of local law enforcement agencies. We find nothing in the language of the statute, its history, or in its purpose, that would limit the applicability of the statute to "state-run" or "local law enforcement" laboratories as defendant suggests.

Moreover, *Webster's Third New International Dictionary* 537 (2002) defines "criminalistics" as "scientific crime detection," and "the application of techniques from the criminal sciences and psychology to the problems of criminal identification." Nothing in these definitions limits the practice of "criminalistics" to state-run or local law enforcement laboratories.

It is common knowledge, and we assume the legislature was equally aware, that there are many privately operated laboratories that engage in criminalistics analysis. If the statute were intended to exclude test results from privately operated laboratories, the legislature certainly could have expressly so stated.

Taking into account the plain language of the statute and its ordinary meaning, and interpreting all parts of the statute in a consistent, harmonious, and sensible manner, we conclude that the reference to "the criminalistics laboratory" in the statute is only a reference to the forensic laboratory that performed the test, the results of which are being offered into evidence. *See People v. Moses,* 64 P.3d 904, 908 (Colo.App.2002) ("Forensic laboratory reports are admissible in criminal proceedings without establishing the usual foundation, absent a request that the technician be made available at trial."). Defendant's interpretation is not a reasonable application of the statute, nor is it consistent with the plain language or meaning of the statute.

Furthermore, in the context of this case, where defendant was charged with violation of section 18–3–106(1)(b)(I), vehicular homicide while under the influence of alcohol or drugs, the statute provides for a presumption of intoxication if an analysis of the defendant's blood reveals over 0.08 grams of alcohol per one hundred milliliters of blood. The statute provides that the test of the blood shall be administered in accordance with the rules and regulations of the state board of health. § 18–3–106(4)(c), C.R.S.2010.

Regulations of the Colorado Department of Health and Environment, in turn, establish minimum standards for certification and approval of entities utilized for alcohol testing. Laboratory Services Division Reg. 1.1, 5 Code Colo. Regs. 1005–2:1. The regulations define a "certified laboratory" as "a laboratory certified by the Department to perform analytical testing of bodily fluids for alcohol." *Id.* Reg. 1.5. Ulfer's testimony established that Chematox was a "certified laboratory." No provision in the regulations concerning certified laboratories requires that the facility be state run or state funded.

We thus reject defendant's argument that the trial court erred in admitting exhibits 12 and 13 because Chematox is not a "state-run" facility.

### B. Right of Confrontation

■ Defendant also contends that admission of exhibits 12 and 13 violated his right to confrontation because the laboratory technician who performed the tests did not testify, and that we must review this claim under the constitutional harmless error standard. However, defendant did not raise this constitutional argument before the trial court, arguing only that the laboratory did not meet the statutory requirement. Nonetheless, denial of a right to confrontation may be raised on appeal under the doctrine of plain error. *People v. Vigil,* 127 P.3d 916, 930 (Colo.2006). We review his argument for plain error and find no error.

Defendant first argues that the admission of the exhibits pursuant to section 16–3–309(5) deprived him of his right to confrontation because the statute places the burden to request the laboratory technician's presence at trial on the defendant rather than the prosecution. However, in *Hinojos–Mendoza v. People,* 169 P.3d 662 (Colo.2007), the supreme court rejected this argument, upholding the constitutionality of section 16–3–309(5) and concluding that the right of confrontation may be waived by the defendant's

failure to request the presence of the lab technician as allowed by the statute. *Hinojos–Mendoza*, 169 P.3d at 668–69.

Defendant contends that the rationale of *Hinojos–Mendoza* may no longer apply after the decision by the United States Supreme Court in *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), because, according to defendant, the Supreme Court "seemed to suggest that a statute requiring a defendant to demand his right of confrontation pretrial after notice did not violate the Confrontation Clause, but that actually requiring him to subpoena the adverse witness would." We disagree with the hypothetical suggestion attributed to the Supreme Court. Furthermore, we are bound by our supreme court's explicit holdings in *Mojica–Simental*, 73 P.3d at 18–20 (section 16–3–309(5) procedures do not impose an undue burden on the defendant and adequately protect his or her right of confrontation); *Hinojos–Mendoza*, 169 P.3d at 669 (reaffirming constitutionality of section 16–3–309(5)); and more recently in *Cropper v. People*, 251 P.3d 434, 437 (Colo. 2011) ("providing the defense with a forensic lab report through discovery is sufficient to put the defendant on notice that, absent a specific request under section 16–3–309(5), the report can be introduced without live testimony"). Here, defendant received notice in discovery that the prosecution intended to introduce the Chematox's laboratory reports for the two blood kits containing defendant's samples.

■ Defendant also argues that he did not knowingly and voluntarily waive his right of confrontation because his counsel "reasonably" interpreted section 16–3–309(5) to apply only where the lab report was issued by a state-run laboratory. We reject this contention.

As we concluded above, the limited application proposed by defendant is not a reasonable interpretation of the statutory language. A defense counsel's erroneous and unreasonable interpretation of section 16–3–309(5) might give a client "a colorable claim for malpractice"; however, it does not render involuntary a defendant's waiver of his confrontation rights. *Cropper*, 251 P.3d at 438

& n. 9. As the court made clear in both *Hinojos–Mendoza* and *Cropper*, the procedures set forth in section 16–3–309(5) apply whether a defense attorney knows them or not. *Hinojos–Mendoza*, 169 P.3d at 670; *Cropper*, 251 P.3d at 438. Further, "when an attorney fails to comply with the procedural rules set forth in section 16–3–309(5)," he or she waives a "defendant's right of confrontation regardless of whether the attorney knew of or understood the statute or its requirements." *Cropper*, 251 P.3d at 438.

## III. Sentence

■ Defendant contends that the trial court erred in sentencing him to eight years in the custody of the DOC with five years mandatory parole. He argues that the court "overlooked several mitigating circumstances," and "relied upon improper evidence," thereby abusing its discretion. We disagree.

"A trial court has broad discretion over sentencing decisions, and will not be overturned absent a clear abuse of that discretion." *Lopez v. People*, 113 P.3d 713, 720 (Colo.2005). "The standard for abuse of discretion is satisfied 'if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair.'" *People v. Muckle*, 107 P.3d 380, 382 (Colo.2005) (quoting *People v. Pineda*, 40 P.3d 60, 63 (Colo.App.2001)).

Contrary to his assertion, ample evidence in the record indicates that the court considered defendant's youth, criminal history, and time confined to the state hospital.

Defendant's reliance on *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), and *People v. Janke*, 720 P.2d 613 (Colo.App.1986), for the proposition that the court abused its discretion by considering "unproven facts, not found by the jury," is misplaced. Those cases apply when the sentence imposed is *beyond* the presumptive range. *Townsend*, 334 U.S. at 740–41, 68 S.Ct. 1252; *Janke*, 720 P.2d at 616. Here, as defendant concedes, the court sentenced him in the middle of the presumptive range of four to twelve years for a class three felony.

Because the sentence imposed is within the range required by law, based on appropriate

considerations as reflected in the record, and factually supported by the circumstances of the case, the sentence did not constitute an abuse of discretion. *See People v. Zuniga,* 80 P.3d 965, 972 (Colo.App.2003).

The judgment of conviction and sentence are affirmed.

Judge HAWTHORNE and Judge ROMÁN concur.