986 So.2d 516 (2008)
STATE of Florida, Petitioner,
v.
Bruce BELVIN, Respondent.
No. SC06-593.
Supreme Court of Florida.
May 1, 2008.
Rehearing Denied July 8, 2008.
*518 Bill McCollum, Attorney General, Tallahassee, FL, and Celia Terenzio, Assistant Attorney General, Bureau Chief, and James J. Carney and Richard Valuntas, Assistant Attorneys General, West Palm Beach, FL, for Petitioner.
Richard W. Springer and Catherine Mazzullo of Richard W. Springer, P.A., Palm Springs, FL, for Respondent.
QUINCE, J.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Belvin v. State, 922 So.2d 1046 (Fla. 4th DCA 2006). In its decision the district court ruled upon the following question, which was certified to be of great public importance:
DOES ADMISSION OF THOSE PORTIONS OF THE BREATH TEST AFFIDAVIT PERTAINING TO THE BREATH TEST OPERATOR'S PROCEDURES AND OBSERVATIONS IN ADMINISTERING THE BREATH TEST CONSTITUTE TESTIMONIAL EVIDENCE AND VIOLATE THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE IN LIGHT OF THE UNITED STATES SUPREME COURT'S HOLDING IN CRAWFORD V. WASHINGTON, 541 U.S. 36 (2004)?
Id. at 1054. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow we approve the decision of the Fourth District and answer the certified question in the affirmative.

FACTUAL AND PROCEDURAL HISTORY
Bruce Belvin was arrested for driving under the influence (DUI). At a non-jury trial in county court, the breath test technician, Rebecca Smith, who administered the breath test and prepared the breath test affidavit, did not testify. The breath test affidavit was admitted over Belvin's objections that the technician should be present and subject to cross-examination. Belvin appealed his conviction and sentence to the circuit court arguing the failure to have the breath technician testify in person at trial violated his right to confrontation *519 as espoused in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The circuit court affirmed the conviction and ruled that the breath test affidavit was not testimonial in nature and that Crawford did not preclude its admission.
Belvin next sought certiorari review in the Fourth District Court of Appeal, which found admission of certain portions of the breath test affidavit during Belvin's criminal trial violated his constitutional right to confrontation under Crawford. The district court noted that breath test affidavits are usually prepared by law enforcement agencies for use in criminal trials or driver's license revocation proceedings. See Belvin, 922 So.2d at 1050-51. Thus, the court opined that such affidavits qualify as statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Id. Thus, the Fourth District remanded the cause for a new trial and certified the question to this Court for our review.

DISCUSSION
The State first contends breath test affidavits are not testimonial and that technician Smith's breath test affidavit in this case was admissible under Crawford. Conversely, Belvin argues the breath test affidavit pertaining to the breath test operator's procedures and observations are testimonial evidence. Thus, the affidavit is inadmissible under Crawford. We will first address whether breath test affidavits are testimonial to determine whether technician Smith's breath test affidavit in this case was admissible under Crawford.
In order to introduce breath test results as evidence in a DUI prosecution, the State must first present evidence that the test was performed substantially in accordance with approved methods, that is, by a person trained and qualified to conduct it, on an approved machine that has been tested and inspected. See State v. Donaldson, 579 So.2d 728 (Fla.1991). Sections 316.1934(5) and 90.803(8), Florida Statutes (2007), provide for the introduction of affidavits containing the necessary evidentiary foundation as a public records exception to the hearsay rule. Such an affidavit is admissible without further authentication and is presumptive proof of the results of an authorized test to determine alcohol content of the blood or breath of a defendant. § 316.1934(5), Fla. Stat. The affidavit must contain the following:
(a) The type of test administered and the procedures followed;
(b) The time of the collection of the blood or breath sample analyzed;
(c) The numerical results of the test indicating the alcohol content of the blood or breath;
(d) The type and status of any permit issued by the Department of Law Enforcement which was held by the person who performed the test; and
(e) If the test was administered by means of a breath testing instrument, the date of performance of the most recent required maintenance on such instrument.
Id. The statute also provides that the law enforcement agency shall provide a form for the affidavit and that the person tested may subpoena the person who administered the test as an adverse witness at a civil or criminal trial. Id.
Section 90.803(8), Florida Statutes (2007), is the public records and reports exception to the hearsay rule. It excludes from hearsay the following:
Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting *520 forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness. The criminal case exclusion shall not apply to an affidavit otherwise admissible under s. 316.1934 or s. 327.354.
§ 90.803(8), Fla. Stat. An item of evidence that meets the requirements of this statutory provision may however be excludable for other reasons. The introductory language to section 90.803 states that items satisfying the requirements of this exception are "not inadmissible" merely because the evidence is hearsay. An item of evidence, such as the affidavit involved in this case, may be inadmissible for other reasons, including that the use of the affidavit would violate the defendant's constitutional right of confrontation. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. The right guaranteed by this clause of the Sixth Amendment differs from the kind of protection that is afforded by state evidence rules governing the admission of hearsay. See generally Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The standard for determining whether the admission of a hearsay statement against a criminal defendant violates the right of confrontation was modified by the Supreme Court in Crawford v. Washington. Before Crawford, the Confrontation Clause issue was controlled by Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In Roberts the Court said that a hearsay statement could be admitted in a criminal trial without violating the right of confrontation if it was shown that the declarant was unavailable and the out-of-court statement bore adequate indicia of reliability. This test focused on the reliability of the statement. As explained in Roberts, a statement had adequate indicia of reliability if it either fell within a firmly rooted hearsay exception or if it bore "particularized guarantees of trustworthiness." Id.
However, in Crawford, the Supreme Court dispensed with the Roberts reliability analysis for testimonial hearsay and held the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. The Court emphasized that if "testimonial" evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. "Only [testimonial statements] cause the declarant to be a `witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id.
Thus, we must initially determine whether the breath test affidavit at issue in the instant case contains testimonial statements. While Crawford did not establish a precise definition for the term "testimonial," the Supreme Court provided some guidance, holding that, at a minimum, statements are testimonial if the declarant *521 made them at a "preliminary hearing, before a grand jury, or at a former trial; and [in] police interrogations." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Following Crawford, the Supreme Court established a general rule for determining whether statements are testimonial or nontestimonial:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Davis v. Washington, 547 U.S. at 822, 126 S.Ct. 2266. The distinction rests on the primary purpose of the statement.
Applying the rationales of Davis and Crawford to the instant case, we conclude that the breath test affidavit is testimonial. First, the affidavit was "acting as a witness" against the accused. Davis, 547 U.S. at 828, 126 S.Ct. 2266; see Crawford, 541 U.S. at 51, 124 S.Ct. 1354. The technician who created the breath test affidavit did so to prove a critical element in Belvin's DUI criminal prosecution. In other words, the breath test affidavit was created "to establish or prove past events potentially relevant to later criminal prosecution." Davis, 547 U.S. at 822, 126 S.Ct. 2266; see Thomas v. United States, 914 A.2d 1, 12-13 (D.C.2006), cert. denied, ___ U.S. ___, 128 S.Ct. 241, 169 L.Ed.2d 160 (2007). Second, the affidavit was not created during an ongoing emergency or contemporaneously with the crime. Instead, it was created "well after the criminal events had transpired." Magruder v. Commonwealth, 275 Va. 283, 657 S.E.2d 113, 129 (2008) (Keenan, J., dissenting); see Davis, 547 U.S. at 830, 832, 126 S.Ct. 2266. Third, the affidavit was created at the request of the police for Belvin's DUI prosecution. See State v. Caulfield, 722 N.W.2d 304, 309 (Minn.2006); State v. March, 216 S.W.3d 663, 666(Mo.), cert. dismissed, ___ U.S. ___, 128 S.Ct. 1441, 169 L.Ed.2d 256 (2007). Finally, the affidavit falls squarely into the category of "formalized testimonial materials, such as affidavits," which the Supreme Court listed in the various formulations of the core class of "testimonial" statements. Crawford, 541 U.S. at 52, 124 S.Ct. 1354 (emphasis added). A breath test affidavit is created under circumstances where the technician is expecting it will be used at a later trial. More precisely, the sole purpose of a breath test affidavit is to authenticate the results of the test for use at trial. See § 316.1934(5), Fla. Stat. (2007).
The State argues that a common thread in testimonial statements is that they generally contemplate the examination of a declarant and the give-and-take of questions and answers. The State claims the breath test affidavits provided for in section 316.1934(5) simply involve a technician's observations regarding the administration of a breath test, not the examination of a declarant and the give-and-take of questions and answers. These arguments are unpersuasive. A statement does not have to be the product of interrogation in order for it to be testimonial. Statements, for example, that are voluntarily given to police officers or prosecutors by declarants who are subsequently unavailable to testify may be testimonial even when they do not involve the "give-and-take of questions and answers." Additionally, the State's contention that the breath test affidavits "simply involve a technician's observations regarding the administration of a breath *522 test" is belied by the Fourth District's observations concerning what is done in the testing process and what is recorded in the affidavit. The court said:
Breath testing operators are required to follow certain procedures to ensure the reliability of the test results, including maintaining a breath test log, observing the defendant for a fixed period of time, and analyzing the requisite number of samples within a specified time frame. Their affidavits are based on what they did and observed while testing the subject. Among other things, the affidavit contains the technician's statement of when he began the period of observation and what procedures he followed in conducting the breath test. These recordings are "testimonial" in our view.
Belvin, 922 So.2d at 1050-51 (footnote omitted).
A breath test affidavit fits squarely within the definition of "testimonial" provided by the Supreme Court in Davis v. Washington. While Davis addressed the issue in the context of police interrogation, its principles are still applicable to this case. It is also conceivable that the breath test affidavit is, in fact, a type of interrogation. It is after all, a series of structured questions developed by state officials and answered by the breath technician who administers the breath test and records specific observations made at the time of testing the accused. "[T]he information recorded by the technician who administered the test is admitted to establish a critical element of the crime of driving under the influence." Belvin, 922 So.2d at 1051. Therefore, the type of statements contained in breath test affidavits are testimonial under Davis because "the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis, 547 U.S. at 822, 126 S.Ct. 2266.
The State also argues that the breath test affidavit is more akin to a "business record" or "public record" than it is to an "affidavit," and that Crawford would allow admission of business records and some other official records because they are not testimonial in nature. See Crawford, 541 U.S. at 56, 124 S.Ct. 1354 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial  for example, business records...."). The State contends, citing United States v. Quezada, 754 F.2d 1190, 1194 (5th Cir.1985), that the breath test affidavits provided for in section 316.1934(5) are routine, objective observations, made as part of the everyday function of the preparing official and involve a technician mechanically registering an unambiguous factual matter. While this Court and other courts have held that records kept in the ordinary course of business are generally admissible, this general rule is not applicable when the record is being prepared at the specific request of a law enforcement agency and is not simply a record that is normally generated by that business under circumstances that do not involve law enforcement.
For example, in Baber v. State, 775 So.2d 258 (Fla.2000), a case which predates Crawford, we held that admission of a hospital record as a business record does not violate the Sixth Amendment. In Baber, the defendant was charged with DUI manslaughter. The defendant was seriously injured in the accident and his blood was "tested for alcohol content" on the hospital's chemical analyzer. Baber, 775 So.2d at 259. The parties agreed the blood test was done for the purpose of medical treatment. The State wanted to *523 introduce the blood alcohol report through the hospital's medical record custodian "who laid the necessary foundation through the business record hearsay exception." Id. The report was admitted over the defendant's objections. Id. We said "that a hospital record of a blood test made for medical purposes, which is maintained by the hospital as a medical or business record may be admitted in criminal cases pursuant to the business record exception to the hearsay rule." Id. at 263. However, in an abundance of caution and apparent foresight, we emphasized that "defendants must be given a full and fair opportunity to contest the trustworthiness of such records before they are submitted into evidence." Id.; see also Love v. Garcia, 634 So.2d 158 (Fla.1994) (holding once predicate has been laid for admission of medical records under the business record exception to hearsay the opposing party must be given an opportunity to prove the untrustworthiness of the records).
However, the district courts of appeal in a number of cases post-Crawford have distinguished Baber. In Johnson v. State, 929 So.2d 4 (Fla. 2d DCA 2005), approved, 982 So.2d 672 (Fla. 2008), the defendant opposed the introduction of a Florida Department of Law Enforcement ("FDLE") lab test through the supervisor, not the person who actually performed the test. The lab report indicated that the substance tested was in fact a controlled substance. The Second District Court of Appeal in finding the test result not admissible through the supervisor distinguished Baber on the ground that the hospital in Baber did not have an interest in the outcome of any future criminal case lodged against the defendant. Johnson, 929 So.2d at 7. In other words, the hospital record in Baber was made during the ordinary course of the hospital's business and not for use in a future prosecution. The court also pointed out that "[t]he business records exception may have been the vehicle for admitting the report, but the vehicle does not determine the nature of the out-of-court statement." Id. at 8.
Similarly, in Rivera v. State, 917 So.2d 210, 211 (Fla. 5th DCA 2005), the defendant was convicted for trafficking in cocaine. On appeal, the defendant argued that the trial court erred in introducing an FDLE lab report, which indicated that the substance tested was cocaine, through the records custodian, pursuant to section 90.803(6), Florida Statutes. The State in Rivera called a supervisor of the chemist who actually performed the test in order to introduce the test into evidence because the chemist who actually performed the test was unavailable. Id. The Fifth District Court of Appeal declined to apply Baber to the case and noted that "extending this exception to a FDLE lab records custodian in a criminal proceeding would threaten Rivera's right under the Confrontation Clause to question the witness to ensure a fair trial." Rivera, 917 So.2d at 212. The district court reasoned that the supervisor "under cross-examination, could not have answered questions concerning chain of custody, methods of scientific testing, and analytical procedures regarding the contraband at issue." Id. The district court differentiated between the indicia of reliability of a hospital test on a patient's blood alcohol level for the benefit of the patient's medical treatment with the State's testing of alleged drug samples to incriminate and convict the accused. Id. In Martin v. State, 936 So.2d 1190 (Fla. 1st DCA 2006), the First District Court of Appeal found that an FDLE lab report admitted over defense objection violated the defendant's right to confrontation where the person who performed the test did not testify. The court reasoned that "[a]pplying Crawford, Florida courts have *524 consistently held that records such as the FDLE report before us are testimonial in nature." Id. at 1192.
In two other cases from the Second District, Williams v. State, 933 So.2d 1283 (Fla. 2d DCA 2006), and Sobota v. State, 933 So.2d 1277 (Fla. 2d DCA 2006), the court confronted the same issue and found that admission of the reports without the testimony of the preparer violated the Confrontation Clause. Both cases were reversed and remanded. And in a case which involved the admission of a breath test affidavit, the Second District also found admission of the affidavit by a person other than the person who administered the test to be error. See Williams, 933 So.2d at 1283.
We agree with the analyses of the district courts that these affidavits are testimonial.
The State next argues that even if the breath test affidavit is deemed testimonial in nature, there is no Crawford violation because technician Smith was unavailable to testify and Belvin waived his opportunity to cross-examine her prior to trial by failing to depose her under Florida Rule of Criminal Procedure 3.220(h)(1)(D). This discovery rule permits defendants to take depositions in cases involving misdemeanors or criminal traffic offenses when good cause is shown to the trial court.
The record in this case demonstrates technician Smith was unavailable at trial. Belvin's counsel repeatedly told the trial court that technician Smith was "not available to anybody at this point" because she allegedly had left the State in order to avoid a misdemeanor battery charge. Because there was no evidence to contradict these statements, the State met its burden of showing that technician Smith was unavailable at trial.
Because Crawford's unavailability prong has been satisfied, we next address whether Belvin had a prior opportunity for cross-examination. To support its position that the defendant had a prior opportunity to cross-examine the witness, the State cites to Blanton v. State, 880 So.2d 798, 801 (Fla. 5th DCA 2004), approved, 978 So.2d 149 (Fla.2008). In Blanton the Fifth District held that Crawford's goal of preventing the use of statements not previously tested through the adversary process can be satisfied by means of a discovery deposition. However, the First District in Lopez v. State, 888 So.2d 693, 701 (Fla. 1st DCA 2004), approved, 974 So.2d 340 (Fla. 2008), rejected the conclusion reached in Blanton. The First District concluded that a discovery deposition does not qualify as a prior opportunity for cross-examination. In the decision now under review, the Fourth District relied on Lopez to conclude that "the taking of a discovery deposition cannot be treated as a proceeding that affords an opportunity for cross-examination." Belvin, 922 So.2d at 1053 (quoting Lopez, 888 So.2d at 701).
In our review of Blanton and Lopez, we concluded that the exercise of the right to take a discovery deposition under rule 3.220 does not serve as the functional substitute of in-court confrontation of the witness. See State v. Lopez, 974 So.2d 340, 349-50 (Fla.2008); Blanton v. State, 978 So.2d 149, 155 (Fla.2008). As we explained in Lopez, there are a number of reasons why a discovery deposition does not satisfy the opportunity for cross-examination that is required under Crawford. See Lopez, 974 So.2d at 347-50. First, rule 3.220(h) was not designed as an opportunity to engage in adversarial testing of the evidence against the defendant, nor is the rule customarily used for the purpose of cross-examination. Instead, the rule is used to learn what the testimony *525 will be and attempt to limit it or to uncover other evidence and witnesses. A defendant cannot be "expected to conduct an adequate cross-examination as to matters of which he first gained knowledge at the taking of the deposition." State v. Basiliere, 353 So.2d 820, 824-25 (Fla.1977). This is especially true if the defendant is "unaware that this deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent's statements." Id. at 824. Second, a discovery deposition is not intended as an opportunity to perpetuate testimony for use at trial, is not admissible as substantive evidence at trial, and is only admissible for purposes of impeachment. Third, the defendant is not entitled to be present during a discovery deposition pursuant to rule 3.220(h). Based on this analysis, we cannot conclude that Belvin waived his opportunity to cross-examine technician Smith by failing to depose her under rule 3.220(h)(1)(D).
Furthermore, even though section 316.1934(5) gives a defendant the right to subpoena the breath test operator as an adverse witness at trial, the statutory provision does not adequately preserve the defendant's Sixth Amendment right to confrontation. Importantly, the burden of proof lies with the state, not the defendant. "Not only does a defendant have no burden to produce constitutionally necessary evidence of guilt, but he has the right to stand silent during the state's case in chief, all the while insisting that the state's proof satisfy constitutional requirements." Contreras v. State, 910 So.2d 901, 908 (Fla. 4th DCA 2005), approved in part and quashed in part, 979 So.2d 896 (Fla. 2008).
Because Crawford's requirement of a prior opportunity for cross-examination has not been satisfied, the admission of those portions of the breath test affidavit pertaining to the breath test technician's procedures and observations in administering the breath test violated Belvin's Sixth Amendment right of confrontation.
We therefore answer the certified question in the affirmative.

Other Issue Raised
The State also argues the district court erred in granting certiorari relief because the circuit court's decision did not violate "a clearly established principle of law." The State contends the principle of law set forth in Crawford is anything but clearly established especially when the opinion expressly refrained from defining testimonial statement. Conversely, Belvin asserts the Crawford decision was controlling law when the circuit court, sitting in its appellate capacity, rendered its opinion. Thus the Fourth District did not err in concluding that the circuit court violated a clearly established principle of law by deciding the case contrary to the holding in Crawford.
The Fourth District summarized the standard for determining whether a lower court has violated a clearly established principle of law in the following passage:
In Haines City Community Development v. Heggs, 658 So.2d 523, 530 (Fla. 1995), the supreme court discussed the standard of review that applies when a district court reviews an appellate decision of a circuit court. The court explained that the proper inquiry is whether the circuit court afforded the petitioner procedural due process and applied the correct law. Failure to apply the correct law, which is synonymous with departure from the essential requirements of the law, is something more than a simple legal error. Id. at 528. To warrant a writ of certiorari, the error must be serious enough to constitute a departure from the essential requirements of the law. Id. There must *526 be a violation of a clearly established principle of law resulting in a miscarriage of justice. Id. (citing Combs v. State, 436 So.2d 93, 95-96 (Fla.1983)).
Belvin, 922 So.2d at 1048.
Contrary to the State's assertions, for purposes of certiorari review a clearly established law can derive from recent controlling constitutional law. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 890 (Fla.2003) ("`Clearly established law' can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law"). Moreover, all of the United States Supreme Court decisions applying or announcing rules of criminal law must be "applied retroactively to all cases, State or Federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a `clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (emphasis added); see also Smith v. State, 598 So.2d 1063, 1066 (Fla.1992) (applying the Griffith rule to decisions of the Florida Supreme Court).
We find no error in the district court's resolution of this issue.

CONCLUSION
Based on the foregoing, we find the portions of the breath test affidavit containing the operator's procedures and observations in administering the breath test are testimonial and their admission at Belvin's criminal DUI trial without a prior opportunity to cross-examine the operator violated his right of confrontation under Crawford. We therefore answer the certified question in the affirmative and approve the decision of the Fourth District.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, and CANTERO, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which BELL, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur with the majority's statement that the breath test technician was unavailable and that Belvin did not "[waive] his opportunity to cross-examine technician Smith by failing to depose her under rule 3.220(h)(1)(D)." Majority op. at 525. However, because I believe that the majority has extended the Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), decisions beyond their intended reach by excluding Belvin's breath test affidavit, I respectfully dissent. I would join the well-reasoned decisions of federal courts and courts from other states that have concluded that lab reports and documents of their kind do not come within the definition of "testimonial" under Crawford. See People v. Geier, 41 Cal.4th 555, 61 Cal.Rptr.3d 580, 161 P.3d 104 (2007) (discussing this point in detail and citing cases). Moreover, even if this affidavit was testimonial, Belvin waived any objection to it by not subpoenaing the technician, which he had a right to do under the statute. In this regard, I would follow the decision of the Colorado Supreme Court in Hinojos-Mendoza v. People, 169 P.3d 662 (Colo.2007).
Crawford has undeniably redefined Confrontation Clause jurisprudence. I agree with the majority that our analysis should first be whether the challenged affidavit is testimonial. The United States Supreme Court did not define "testimonial" in Crawford, though I believe the California Supreme Court's analysis of the proper definition is correct. See Geier, 61 Cal. *527 Rptr.3d 580, 161 P.3d at 133. Geier set forth a three-part analysis for determining when certain evidence is testimonial and applied it to the DNA lab report at issue. I would employ the same analysis and rationale here. The California Supreme Court explained:
While we have found no single analysis of the applicability of Crawford and Davis to the kind of scientific evidence at issue in this case to be entirely persuasive, we are nonetheless more persuaded by those cases concluding that such evidence is not testimonial, based on our own interpretation of Crawford and Davis. For our purposes in this case, involving the admission of a DNA report, what we extract from those decisions is that a statement is testimonial if (1) it is made to a law enforcement officer or by or to a law enforcement agent and (2) describes a past fact related to criminal activity for (3) possible use at a later trial. Conversely, a statement that does not meet all three criteria is not testimonial.
Regarding the first point, as the court noted in Crawford it is the "involvement of government officers in the production of testimonial evidence" that implicates confrontation clause concerns. (Crawford, supra, 541 U.S. at p. 53, 124 S.Ct. 1354, 158 L.Ed.2d 177.) In this respect, we use the term agent not only to designate law enforcement officers but those in an agency relationship with law enforcement. Regarding the third point, while the possible use of such statements at a later trial remains an important consideration, as we noted in our Cage decision, Davis "now confirms that the proper focus [about whether an out-of-court statement is testimonial] is not on the mere reasonable chance that an out-of-court statement might later be used in a criminal trial." (People v. Cage, supra, 40 Cal.4th at p. 984, 56 Cal.Rptr.3d 789, 155 P.3d 205, fn. 14; United States v. Ellis, supra, 460 F.3d at p. 926 ["A reasonable person reporting a domestic disturbance, which is what [the victim] in Davis was doing, will be aware that the result is the arrest and possible prosecution of the perpetrator.... So it cannot be that a statement is testimonial in every case where a declarant reasonably expects that it might be used prosecutorially" [since the victim surely expected such and yet her statements were held in Davis to be nontestimonial]].)
... [Applying this analysis, t]here is no question that the DNA report [at issue here] was requested by a police agency. Even if the employees of [the laboratory in this case] are not themselves members of law enforcement, they were paid to do work as part of a government investigation; furthermore, it could reasonably have been anticipated that the report might be used at a later criminal trial. [The lab analyst's] observations [in this case], however, constitute a contemporaneous recordation of observable events rather than the documentation of past events. That is, [the analyst] recorded her observations regarding the receipt of the DNA samples, her preparation of the samples for analysis, and the results of that analysis as she was actually performing those tasks. "Therefore, when [she] made these observations, [she]  like the declarant reporting an emergency in Davis  [was] `not acting as [a] witness [ ]; and [was] `not testifying.'" (United States v. Ellis, supra, 460 F.3d at pp. 926-927.)
We find support for this distinction even in the post-Crawford but pre-Davis decisions that concluded scientific evidence memorialized in routine forensic reports is not testimonial. A common theme that unites these decisions is that *528 the circumstances in which these reports are generated involve the contemporaneous recordation of observable events. (See, e.g., Commonwealth v. Verde, supra, 827 N.E.2d at p. 705 ["Certificates of chemical analysis ... merely state the results of a well-recognized scientific test determining the composition and quantity of a substance]; State v. Lackey, supra, [280 Kan. 190] 120 P.3d [332] at p. 352 [(2005)][, overruled on grounds other than statement as to admissibility of autopsy report, 283 Kan. 569, 158 P.3d 317] [Preclusion of autopsy report because of unavailability of medical examiner would be "a harsh and unnecessary result in light of the fact that autopsy reports generally make routine and descriptive observations of the physical body ..."]; People v. Brown, supra, 801 N.Y.S.2d at p. p. 711 ["The notes and records of the laboratory technicians who tested the DNA samples in this case ... were made for the routine purpose of ensuring the accuracy of the testing done in the laboratory and as a foundation for formulating the DNA profile"].) The post-Davis federal cases that have held such statements are not testimonial because they are business records are consistent with this theme since under the Federal Rules of Evidence a business record is defined as "`[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation.'" (United States v. Feliz, supra, 467 F.3d [227] at p. 234 [(2d Cir.2006)], quoting Fed. Rules Evid[.], rule 803(6), 28 U.S.C.; United States v. Ellis, supra, 460 F.3d at pp. 926-927.) [n. 12]
[N. 12]. We do not hold that simply because a document qualifies as a business record that it is necessarily nontestimonial since conceivably some such document could contain historical facts.[[1]]
Thus, we find unpersuasive those cases, cited above, holding that under Davis various types of forensic evidence in the form of laboratory reports were testimonial because their primary purpose was to establish a fact at trial regarding the defendant's guilt of the charged crime. This reading of Davis equates a testimonial statement with any statement that it might reasonably be anticipated will be used at trial, an approach that, as we noted in Cage, Davis rejects. In our view, under Davis, determining whether a statement is testimonial requires us to consider the circumstances under which the statement was made. As we read Davis, the crucial point is whether the statement represents the contemporaneous recordation of observable events. But, as we have also observed, even before Davis a *529 number of courts had pointed to the circumstances under which statements were made in laboratory reports and other types of forensic evidence as a reason to find those statements nontestimonial under Crawford, notwithstanding their possible use at trial. Those same circumstances are also present here.
For example, [the analyst's] report and notes [in this case] were generated as part of a standardized scientific protocol that she conducted pursuant to her employment.... While the prosecutor undoubtedly hired [the laboratory employing the analyst] in the hope of obtaining evidence against defendant, [the analyst] conducted her analysis, and made her notes and report, as part of her job, not in order to incriminate defendant. Moreover, to the extent [the analyst's] notes, forms and report merely recount the procedures she used to analyze the DNA samples, they are not themselves accusatory, as DNA analysis can lead to either incriminatory or exculpatory results....
Thus, like the DNA analysis records in People v. Brown, supra, 9 Misc.3d 420, 801 N.Y.S.2d 709, [the analyst's] notes were made "during a routine, non-adversarial process meant to ensure accurate analysis." (Id. at p. 712; see also Rollins v. State (Ct.Spec.App.2005) 161 Md.App. 34, 866 A.2d 926, 954 ["findings in an autopsy report of the physical condition of a decedent, which are routine, descriptive and not analytical," held nontestimonial].) In simply following [the laboratory's] protocol of noting carefully each step of the DNA analysis, recording what she did with each sample received, [the analyst] did not "bear witness" against defendant. (State v. Forte, supra, [360 N.C. 427] 629 S.E.2d [137] at p. 143 [(2006)].) Records of laboratory protocols followed and the resulting raw data acquired are not accusatory. "Instead, they are neutral, having the power to exonerate as well as convict." (Ibid.)
Accordingly, even under this earlier authority, the circumstances under which [the analyst's] report and notes were generated, and not whether they would be available for use at trial, would have been determinative of whether they were testimonial, and pursuant to this authority they would not have been. Davis confirms that the critical inquiry is not whether it might be reasonably anticipated that a statement will be used at trial but the circumstances under which the statement was made. We conclude therefore that the DNA report was not testimonial for purposes of Crawford and Davis.

Geier, 61 Cal.Rptr.3d 580, 161 P.3d at 138-40 (some citations omitted); accord State v. O'Maley, 156 N.H. 125, 932 A.2d 1 (2007), petition for cert. filed, (U.S. Nov. 7, 2007) (No. 07-7577); State v. Crager, 116 Ohio St.3d 369, 879 N.E.2d 745 (2007).
Similarly, I believe that under Geier's analysis, Belvin's affidavit is not testimonial. The majority comes to the opposite conclusion because the circumstances surrounding the making of this affidavit "objectively indicate that there [was] no ... ongoing emergency, and that the primary purpose ... [was] to establish or prove past events potentially relevant to later prosecution." Majority op. at 522 (quoting Davis, 126 S.Ct. at 2273-74). First, as set forth in Geier above, I do not agree that the breath test affidavit recorded past events. Second, although the instant affidavit was "relevant to later prosecution," id., this did not end the Supreme Court's analysis in Davis or the California Supreme Court's analysis in Geier. Neither should it end our analysis in this case. In Davis, the victim's 911 call to report domestic abuse, though a call for help, surely *530 also had a "primary purpose" of proving criminal acts for later prosecution. As various courts have noted and as was discussed in Geier, it was not excluded. See Davis, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224; United States v. Ellis, 460 F.3d 920, 924-27 (7th Cir.2006) (making this same observation as to Davis); Geier, 61 Cal.Rptr.3d 580, 161 P.3d at 139 (same, citing People v. Cage, 40 Cal.4th 965, 56 Cal.Rptr.3d 789, 155 P.3d 205 (2007)). Instead, the Supreme Court in Davis considered all of the factors surrounding the 911 call, not just that it was made to the police in connection with a crime. Similarly, though Belvin's affidavit had a prosecution-related "primary purpose," there are other countervailing factors to consider.
Breath test affidavits do not involve the expression of opinion or exercise of discretion; they merely state the results displayed by a breathalyzer after applying formulaic procedures. Cf. Commonwealth v. Verde, 444 Mass. 279, 827 N.E.2d 701, 705 (2005) (concluding that "[c]ertificates of chemical analysis are neither discretionary nor based on opinion" and are thus not testimonial). Such affidavits do not cast the shadow of "the principal evil at which the Confrontation Clause was directed" that is, ex-parte testimony  and I would not exclude them. Crawford, 541 U.S. at 50, 124 S.Ct. 1354.
Instead, I would align this Court with the body of cases cited by the California Supreme Court that have not excluded similar documents. See Geier, 61 Cal. Rptr.3d 580, 161 P.3d at 135-37 (citing cases). Many other courts have also held analogous documents to be nontestimonial. Cf. Ellis, 460 F.3d 920 (blood and urine analysis prepared at request of officer not testimonial); United States v. Washington, 498 F.3d 225 (4th Cir.2007) (blood test for illegal drug not testimonial); United States v. Cantellano, 430 F.3d 1142 (11th Cir.2005) (warrant of deportation not testimonial); United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir.2005) (certification of nonexistence of record created by government in preparation for trial not testimonial); United States v. Rueda-Rivera, 396 F.3d 678 (5th Cir.2005) (same); Perkins v. State, 897 So.2d 457 (Ala.Crim. App.2004) (autopsy report not testimonial); Neal v. State, 281 Ga.App. 261, 635 S.E.2d 864 (2006) (certificate of inspection of breath testing device not testimonial); Verde, 444 Mass. 279, 827 N.E.2d 701 (lab report on cocaine weight not testimonial); State v. Dedman, 136 N.M. 561, 102 P.3d 628 (2004) (blood alcohol test made at request of officer not testimonial); People v. Durio, 7 Misc.3d 729, 794 N.Y.S.2d 863 (N.Y.Sup.Ct.2005) (autopsy report not testimonial); Felix v. State, No. 05-04-01322-CR, 2005 WL 3163677 (Tex.App.2005) (unpublished) (blood alcohol test not testimonial).
Moreover, even if this breath test affidavit was testimonial, I would not exclude it. I would follow the decision of the Colorado Supreme Court in Hinojos-Mendoza and of the Virginia Supreme Court in Magruder v. Commonwealth[2] and hold that Belvin waived his opportunity to cross-examine. Section 316.1934(5), Florida Statutes (2007),[3] provides that the "[a]dmissibility of the affidavit does not abrogate the right of the person tested to subpoena the person who administered the test for examination *531 as an adverse witness at a civil or criminal trial or other proceeding." Belvin did not do this. In Hinojos-Mendoza, the Colorado Supreme Court dealt with a similar statute. That Court stated:
Section 16-3-309(5) requires that at least ten days prior to trial a partyin this case the defendantrequest that the lab technician testify, or else the lab report will be admitted without the technician's in-court testimony. Failure to timely request the presence of the lab technician therefore waives the right to confront the technician. Hinojos-Mendoza argues that by admitting testimonial lab reports without a showing of the technician's unavailability and without a prior opportunity for cross-examination, section 16-3-309(5) violates on its face the state and federal Confrontation Clauses. See Crawford, 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.
It is well-established, however, that the right to confrontation can be waived. Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Hawkins v. Hannigan, 185 F.3d 1146, 1154 (10th Cir.1999). Waiver is defined as the "intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation omitted). Consequently, there is no appeal from a waived right. United States v. Aptt, 354 F.3d 1269, 1281 (10th Cir.2004). Crawford did not alter the fact that the right to confrontation can be waived.
"The primary purpose of the Confrontation Clause is to secure for a defendant the opportunity of cross-examination." People v. Dist. Court, 869 P.2d 1281, 1287 (Colo.1994) (emphasis added); see generally Crawford, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Assuming the opportunity for confrontation is provided, the right to confrontation is not denied because the prosecution is allowed to present testimony which the defendant chooses not to cross-examine. Dist. Court, 869 P.2d at 1288. In other words, where a defendant chooses not to take advantage of the opportunity to cross-examine a witness, the defendant has not been denied his constitutional right to confrontation. The procedure provided in section 16-3-309(5) for ensuring the presence of the lab technician at trial does not deny a defendant the opportunity to cross-examine the technician, but simply requires that the defendant decide prior to trial whether he will conduct a cross-examination. The statute provides the opportunity for confrontationonly the timing of the defendant's decision is changed.
We have recognized the constitutionality of similar statutory procedural requirements affecting the exercise of other fundamental constitutional rights. For example, a statute requiring a defendant to make a timely pretrial disclosure of alibi witnesses, or lose the chance to call those witnesses, does not infringe the defendant's constitutional right to call witnesses in his own defense. People v. Hampton, 696 P.2d 765, 774 (Colo.1985). We have also held that the statutory prerequisites to a jury trial in municipal court of filing a written demand and payment of a fee do not abridge the constitutional right to a jury trial. Christie v. People, 837 P.2d 1237 (Colo.1992). As we said in Christie, "[t]he requisite ... demand [for the lab technician to testify] is no more burdensome to a defendant than is making the decision [whether to cross-examine the technician] itself." 837 P.2d at 1244.
We note that other jurisdictions have upheld the post-Crawford constitutionality of statutes similar to section 16-3-309(5). See State v. Cunningham, 903 *532 So.2d 1110 (La.2005); City of Las Vegas v. Walsh, 121 Nev. 899, 124 P.3d 203 (2005); Brooks v. Commonwealth, 49 Va.App. 155, 638 S.E.2d 131 (2006); cf. State v. Birchfield, 342 Or. 624, 157 P.3d 216, 219-20 (2007) (holding Oregon's statute requiring the defendant to subpoena the lab technician unconstitutional, but stating a demand requirement would be constitutional). But see Caulfield, 722 N.W.2d at 313 (holding that a similar Minnesota statute violates the Confrontation Clause because it does not give the defendant adequate notice that failure to comply with the statutory notice requirement waives the right to confrontation). We find no constitutional infirmity in section 16-3-309(5), and we therefore uphold the facial constitutionality of the statute.
2. As-Applied Challenge
Hinojos-Mendoza relies upon our decision in Mojica-Simental to argue that section 16-3-309(5) is unconstitutional as applied in his case because he did not voluntarily, knowingly, and intentionally waive his fundamental right to confrontation. [People v. Mojica-Simental, 73 P.3d 15 (Colo.2003).] In Mojica-Simental, we stated in dicta that waiver of the right to confrontation must be voluntary, knowing, and intentional. 73 P.3d at 20. We noted that "[i]f a defendant does not have actual notice of the requirements of the statute, or mistakenly fails to notify the prosecution to have the technician present to testify, there is a significant possibility that a defendant's failure to act may not constitute a voluntary waiver of his fundamental right to confrontation." Id. at 20-21. We suggested a number of factors for a trial court to consider when determining the admissibility of a lab report under section 16-3-309(5), including whether "an attorney or a pro se litigant actually knew that he was required to notify the opposing party of his desire to have the witness present." Id. at 21. Hinojos-Mendoza argues that because his attorney was unaware of section 16-3-309(5)'s procedural requirement, he did not voluntarily waive his fundamental constitutional right to confrontation, and thus, the statute is unconstitutional as applied.
The dicta in Mojica-Simental was based on the faulty premise that the right to confrontation can only be waived if the defendant personally makes a voluntary, knowing, and intentional waiver. 73 P.3d at 20. We cited People v. Curtis, 681 P.2d 504 (Colo. 1984), to support the statement in dicta that waiver of the confrontation right must be voluntary, knowing, and intentional. Id. In Curtis, we held that the right to testify was among "that group of rights so fundamental and personal" as to require "the procedural safeguards concerning voluntary, knowing and intentional waiver ... established for the right to counsel." 681 P.2d at 511 (emphasis added). We determined that the decision whether to testify had to be made by the defendant personally, not by counsel, and in order to ensure that a waiver of the right to testify is voluntary, knowing, and intentional, trial courts must give defendants a thorough on-the-record advisement. Id. at 513-15.
The fact that relinquishment of the right to testify requires a voluntary, knowing, and intentional waiver by the defendant does not mean that all fundamental constitutional rights are subject to the same requirements. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly *533 informed or voluntary, all depend on the right at stake." Olano, 507 U.S. at 733, 113 S.Ct. 1770. The right to counsel, the right to testify, the right to trial by jury, and the entrance of a guilty plea are sufficiently personal and fundamental as to require a voluntary, knowing, and intentional waiver by the defendant himself. Curtis, 681 P.2d at 511.
However, "as to other rights `[d]efense counsel stands as captain of the ship.'" Id. (quoting Steward v. People, 179 Colo. 31, 34, 498 P.2d 933, 934 (1972)). The right to confrontation falls into the class of rights that defense counsel can waive through strategic decisions, such as choosing whether and how to conduct cross-examination or by stipulating to the admission of evidence. Id. ("[D]ecisions committed to counsel include ... whether and how to conduct cross-examination...."); Morse v. People, 180 Colo. 49, 54, 501 P.2d 1328, 1330-31 (1972) (defense counsel's stipulation to admission of witness depositions waived the defendant's right to confront the witnesses at trial); see also Aptt, 354 F.3d at 1282 (defense counsel waives defendant's Sixth Amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object and the decision is one of reasonable trial strategy); Hawkins, 185 F.3d at 1154-56 (same); 3 Wayne R. LaFave et al., Criminal Procedure § 11.6(a) (2d ed. 1999) ("[T]he Supreme Court has indicated, in dictum or holding, that counsel has the ultimate authority in ... foregoing cross-examination."). "Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision to forgo cross-examination...." Taylor v. Illinois, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).
Defense counsel, therefore, may waive a defendant's right to confront the technician who prepared a lab report by not complying with the procedural requirements of section 16-3-309(5). Moreover, we presume that attorneys know the applicable rules of procedure. Christie, 837 P.2d at 1244. Given this knowledge, we can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue.[n. 6] See id. at 1243-44; see also Barker v. Wingo, 407 U.S. 514, 528-29, 528-29, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (a trial court should give "due consideration [to] any applicable formal procedural rule" when determining whether the defendant waived the right to a speedy trial by failing to request one). Therefore, where a defendant such as Hinojos-Mendoza is represented by counsel, the failure to comply with the statutory prerequisites of section 16-3-309(5) waives the defendant's right to confront the witness just as the decision to forgo cross-examination at trial would waive that right.[n. 7] Many other courts have found a valid waiver in similar circumstances. See Brooks, 638 S.E.2d at 138 ("In sum, we hold a defendant's failure timely to notify the Commonwealth of his desire to confront the forensic analyst at trial constitutes a waiver of that right."); City of Las Vegas, 124 P.3d at 208; State v. Campbell, 719 N.W.2d 374, 378 (N.D.2006); Deener, 214 S.W.3d at 528; see also Caulfield, 722 N.W.2d at 318-19 (Anderson, J., dissenting).[n. 8]
[N.6]. As already explained in this opinion, the right to confront the lab technician is not a personal right that can only be waived by the defendant. Unlike the situation in Christie, wherein the right to a jury trial was at stake, the trial court does not need to *534 make sure that the attorney's failure to comply with section 16-3-309(5) reflects the informed and voluntary decision of the defendant.
[N.7]. We offer no opinion on whether the analysis would be altered if Hinojos-Mendoza had been a pro se defendant.
[N.8]. This conclusion may, at first blush, appear to implicate what is known as the demand-waiver doctrine, which presumes waiver of a right through inaction. Barker, 407 U.S. at 525, 92 S.Ct. 2182. The Supreme Court disapproved of a strict demand-waiver doctrine in determining whether the right to a speedy trial was waived, because the doctrine is inconsistent with the definition of waiver as the intentional relinquishment of a known right. Id. In Christie, however, we explained the difference between uninformed inaction and informed inaction, noting that "[i]n the latter case ... there is a `decision' made, namely, the informed decision not to exercise the right...." 837 P.2d at 1243.
Hinojos-Mendoza, 169 P.3d at 668-70. It appears to me that the Colorado Supreme Court was correct in its analysis. Instead of adopting the analysis of the dissent in Magruder, as the majority has done today, see majority op. at 521, I would apply the reasoning of the majorities in Hinojos-Mendoza and Magruder to this case and reach the same result as those courts reached.
Finally, I note the very practical point that the procedure which is set by the statute to allow the defendant to require the technician to come to court recognizes that in the vast, vast majority of cases, the technician's testimony adds nothing to the proceedings. If the defendant does have a real need to cross-examine the technician, the procedure provides a way to do it. Unfortunately, with the thousands of breath tests that are performed, usually the technician will have no present recollection of the particular test other than what is recorded in the affidavit. In such cases, requiring the State to offer the technician's vacuous testimony will at best be costly and time-consuming and at worst inhibit the prosecution of DUI cases.
As to this last point, I am very concerned that the majority's decision will needlessly make it much more difficult and expensive to prosecute DUI cases. This will have an adverse effect on the safety of our highways and streets. Accordingly, I respectfully dissent from the majority's holding that the breath test affidavit should be excluded under the Confrontation Clause.
BELL, J., concurs.
NOTES
[1] I emphasize that I do not believe that evidence is nontestimonial simply because it falls under the business record definition of the Federal Rules of Evidence or the business record definition of a state's rules of evidence. Under Crawford, if evidence is testimonial, it falls under the Confrontation Clause. The fact that federal or state rules of evidence define a "business record" in a manner that captures testimonial evidence does not exempt the evidence from the reach of the Sixth Amendment. Business records are not ipso facto nontestimonial. Instead, it is the nontestimonial nature of evidence that may remove it from Crawford, a quality many business records coincidentally possess. As the California Supreme Court observes here, one such nontestimonial quality business records often possess is that they are a contemporaneous recording of present  not past  events.
[2] Magruder v. Commonwealth, 275 Va. 283, 657 S.E.2d 113 (2008) (holding under an analogous statute that defendants waived their opportunity to cross-examine analysts).
[3] I agree with the Fourth District's decision in State v. Irizarry, 698 So.2d 912 (Fla. 4th DCA 1997), that State v. Donaldson, 579 So.2d 728 (Fla.1991), has been superseded by section 316.1934(5), Florida Statutes (effective July 1, 1991).