MAY, J.
Issues of standing, land use planning and zoning, statutes, ordinances, a casino, and three residents are the ingredients of this petition for second tier certiorari from an appellate decision of the circuit court. The circuit court denied the residents’ challenges to the City’s zoning ordinances relating to the construction of a hotel and parking garages servicing the Seminole Casino Coconut Creek. The residents argue that the circuit court applied the incorrect law in denying their challenges to various zoning and planning ordinances enacted by the City of Coconut Creek. The City and the Seminole Tribe [Tribe] respond that the residents lack standing. We chose the simplest legal recipe and hold that the recent statutory change in section 380.06, Florida Statutes (2012), eliminates the possibility of a miscarriage of justice under the facts of this case. We therefore deny the petition.
Through its ordinances, the City approved the Tribe’s application to rezone 45 acres within a development to permit a 1,000 room hotel, two parking garages with more than 4,000 parking spaces, and a site plan for a seven-story parking garage with more than 2,800 spaces. Three City residents opposed the expansion. They maintain the City could not approve substantial changes within the development without complying with the mandatory requirements of section 380.06(19), Florida Statutes (2010), the development of regional impact [DRI] statute.[1]
*1009 The City and Tribe respond by asserting: (1) the residents do not have standing; and (2) section 880.06 does not apply to the subject ordinances, which concerned local rezoning and site plan approvals. The Tribe points out that, even if the circuit court applied the wrong law, there is no miscarriage of justice because section 880.06 has since been amended.[2] We agree with the last , argument and find it determinative.
Section 380.06(19)(a), Florida Statutes (2010), provides in part:
Any proposed change to a previously approved development which creates a reasonable likelihood of additional regional impact, or any type of regional impact created by the change not previously reviewed by the regional planning agency, shall constitute a substantial deviation and shall cause the proposed change to be subject to further development-of-regional-impact review.
The balance of section 380.06(19) provides examples of proposed changes to a DRI that necessarily constitute a “substantial deviation” requiring further DRI impact review.
The City originally approved the Commerce Center of Coconut Creek Development of Regional Impact in 1987 by adopting Ordinance No. 116-87, the formal development order for the DRI. By its express terms, the ordinance was adopted pursuant to section 380.06. The development order has been amended a number of times since then. . The Tribe owns 45 of the 101 acres within the DRI, which is near the Tribe’s Coconut Creek casino. The casino is not part of the DRI, but is on land held by the federal government in trust for the Tribe.
A 2001 DRI amendment deleted prior restrictions to the particular usage and square footage and allowed development of any mix of commercial, office, and industrial use as long as the cumulative development did not generate more than 2,107 peak hour trips. A 2007 amendment to the DRI development order added “hotel,” and removed “industrial,” as a permitted use. The Tribe’s Notice of Proposed Change to the development order did not include, a specific number of hotel rooms but estimated the total number of peak hour trips as 2,107 (the maximum permitted) based on an “assumed development level” of 1,000 hotel rooms.
In prior proceedings, two City residents, who are not the petitioners here, petitioned the circuit court for a writ of certio-rari challenging the 2007 amendment to the development order and filed a complaint for declaratory and injunctive relief. The circuit court denied the petition. The City, Tribe, and circuit court interpreted the 2001 amendment to mean that proposed changes to development within the DRI were permitted as long as the 2,107 peak hour trip threshold was not exceeded regardless of any other criteria in section 380.06(19).
On second tier review, the Tribe argued that a substantial deviation had not occurred because the number of hotel rooms would be decided later at the rezoning stage! The Tribe asserted that residents could challenge the size, height, or number of rooms at that time. We denied the petition agreeing that expanding the permitted use to include “hotel” was not a substantial deviation under the DRI statute. We agreed with the Tribe that DRI review was not required because the number of hotel rooms had not been decided at *1010 that time. Our unreported order provided that denial was “without prejudice to the petitioners’ rights under the statute at such time as the developer seeks additional approvals in connection with the number of hotel rooms and any impact on traffic.” Turcotte v. City of Coconut Creek, No. 4D07-4459 (Fla. 4th DCA August 26, 2008).
The circuit court then entered a summary judgment against the residents. On appeal, we held that our denial of the prior certiorari petition barred the subsequent appeal of the summary judgment because the eases involved the same issues. Turcotte v. City of Coconut Creek, 88 So.3d 296 (Fla. 4th DCA 2012).
In 2010, the Tribe filed an application to rezone approximately 45 acres - to a planned MainStreet Development District to allow “a multi-phase Resort Hotel and Entertainment facility” including a 275 foot tall, 1,000 room hotel and seven-story transportation center with 4,800 parking spaces. The application acknowledged the proposed project was within the Commerce Center DRI and the City’s Main-Street Project Area and was within the DRI peak trip threshold of 2,107. It did not mention any of the statutory thresholds in section 380.06(19)(b)l.-14. The current City residents contend that this was the first time the Tribe ever sought approval of 1,000 hotel rooms within the DRI.
At a public hearing, the Tribe’s attorney argued the Tribe had vested rights through the DRI that gave it 2,107 peak hour trips and the proposed project would not exceed that amount. The Tribe’s land-planning expert indicated the proposed rezoning was within the DRI threshold. Neither referred to section 380.06(19)(b). The Planning and Zoning Board unanimously recommended approval of the rezoning application and site plan.
The residents’ counsel appeared at the hearing and argued the proposed 1,000 room hotel constituted a “substantial deviation” from the previously approved DRI development order because it increased the number of hotel rooms beyond the 83-room threshold in section 380.06(19)(b)(9), Fla. Stat. (2010).[3] The residents’ counsel argued the project had to undergo further development of regional impact review at the state, local, and regional level because the proposed multi-story parking garage constituted a substantial deviation under section 380.06(19)(b)l., Fla. Stat. (2010).[4]
The City’s attorney told the City Commission: “We have already litigated this DRI stuff, and it’s been decided by the Court so I don’t think we need to discuss that anymore.”[5] The City Commission *1011 conducted the first reading of the proposed Planned MainStreet Development District rezoning and the site plan for the parking garage. It approved the rezoning ordinances by a 5-0 vote. The second reading occurred two weeks later, and the City Commission again approved the ordinances by a 5-0 vote.
The three residents sought certiorari review of the ordinances in the circuit court. They argued: (1) the City failed to consider whether the proposed changes constituted a substantial deviation from the previously approved DRI order; (2) the proposed 275-foot tall, hotel more than doubled the height restrictions in the City’s MainStreet Design Standards; (3) the proposed hotel and seven-story transportation center were incompatible with the surrounding neighborhood and violated the City’s zoning code; and (4) the approved rezoning constituted an impermissible “special privilege” to the Tribe in violation of the City’s rezoning criteria.
The circuit court reviewed the petition and issued an order to show cause. In their response, the City and Tribe raised three main arguments. They first argued that the numeric thresholds in the DRI statute, section 380.06(19), did not apply because the rezoning application and site plan did not seek to amend the existing DRI development order. Second, they claimed that substantial deviation analysis had already been performed by the City when the DRI was amended in 2001 and 2007. And third, they argued that the peak hour trip threshold of 2,107 controlled.
The circuit court, sitting in its appellate capacity, found the City did not depart from the essential requirements of law because the DRI statute only applied to requests to amend a DRI development order, and not to rezoning or site plans within the DRI. It accepted the City’s argument that rezoning within the DRI only needed to stay within the 2,107 peak hour trip threshold and was not controlled by the substantial deviation thresholds in the DRI statute. The circuit court found competent substantial evidence to support the City’s determination that its Code and MainStreet Design Standards were met.
The residents now ask us for second tier certiorari review which is discretionary. We have limited review on a second tier certiorari petition. We are permitted to determine whether the circuit court failed to provide procedural due process or applied the incorrect law, thereby resulting in a miscarriage of justice. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003); State v. Belvin, 986 So.2d 516, 525 (Fla.2008). We have been cautioned against liberally granting second-tier review. Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086, 1092 (Fla.2010).
The residents continue to argue that the City failed to take the DRI statute’s substantial deviation criteria into account in approving the site plan and zoning of the hotel and parking spaces. The City and Tribe respond that the residents do not have standing under Renard v. Dade Cnty., 261 So.2d 832 (Fla.1972). The circuit court found that the residents had standing. We do not address standing because we find that recent legislative amendments to the DRI statute eliminate any potential miscarriage of justice that would merit extraordinary relief.
In Chapter 2011-139, § 54 at 158, Laws of Florida, the legislature removed any substantial deviation DRI criteria relating to the number of hotel rooms or percentage of parking spaces. In fact, Chapter 11-139, § 55 at 170, Laws of Florida, elim- *1012 mated hotel and motel development from DRI review altogether. The statewide guidelines and standards previously subjected proposed hotel or motel development that exceeded a certain number of units to DRI review. See § 380.0651(3)(f), Fla. Stat. (2010). The 2011 amendments to the DRI statute did away with these proscriptions. In addition, another recent amendment to the DRI statute provides that “[cjhanges that do not increase the number of external peak hour trips and do not reduce open space and conserved areas within the project except as otherwise permitted by sub-subparagraph j” do not constitute a substantial deviation. § 380.06(19)(e)2.k., Fla. Stat. (2012).
Even if there was error in the circuit court’s ruling, the Tribe’s proposed development of a hotel is not subject to DRI review under current law. The Tribe could therefore withdraw and resubmit its rezoning application without triggering a “substantial deviation” relating to the number of hotel rooms and parking spaces. There is no miscarriage of justice that warrants an extraordinary writ of certiora-ri in these circumstances.
In addition, we conclude that the residents’ claims regarding the City’s Main-Street Design Standards is beyond the scope of this court’s review. We therefore deny the petition.’
WARNER and CIKLIN, JJ., concur.

. Section 380.06(1), Florida Statutes (2010), defines a DRI as “any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county." The statute provides for *1009 adoption of statewide guidelines to determine whether particular developments must undergo development-of-regional-impact review. § 380.06(2), Fla. Stat. (2010).

. The amended statute now exempts hotels and ■ motels -from DRI review. § 380.06(19)(e)2.k., Fla. Stat. (2012).

. This subparagraph provides that an increase in the number of hotel rooms by 10 percent or 83 rooms, whichever is greater, constitutes a substantial deviation.

. This subparagraph provides in part that increasing the number of parking spaces at an attraction or recreational facility by ten percent or 330 spaces, whichever is greater, constitutes a substantial deviation. A hotel, however, is treated separately from “attractions and recreation facilities” under the DRI statute. Compare § 380.065 l(3)(b), Fla. Stat. (2010) ("Attractions and recreation facilities”), with § 380.0651(3)(f), Fla. Stat. (2010) ("Hotel and motel development”), and § 380.06( 19)(b) 1, Fla. Stat. (2010), with § 380.06(19)(b)9„ Fla. Stat. (2010). This sub-paragraph does not apply.

.The residents maintain the City and Tribe misrepresented the effect of the 2007 DRI amendment causing us to deny the previous petition. The City and Tribe respond that the 2007 amendment approved a 1,000 room hotel. At a City Commission meeting in January, 2011, the mayor stated the 2007 amendment approved a hotel with 1,000 rooms. The mayor then received confirmation from the City’s Director for the Department of Sustainable Development that his statement was correct and that up to 1,000 rooms were also reviewed and accepted by the Florida Depart *1011 ment of Transportation and the Department of Community Affairs.